[L.A. No. 28728. In Bank. Apr. 30, 1968.]

CONTINENTAL BAKING COMPANY, Plaintiff, Cross-
defendant and Respondent, v. WILLIAM KATZ et al.,
Defendants, Cross-complainants and Appellants.

516

William Katz, in pro. per., for Defendants, Cross-complainants and Appellants.

Stapleton & Isen, F. G. Stapleton and Gerald F. Miller for Plaintiff, Cross-defendant and Respondent.

SULLIVAN, J.—In this action in which both parties seek injunctive relief in respect to an easement, defendants and cross-complainants[1] (hereafter referred to collectively as

[1] Defendants and cross-complainants are: William Katz, Evelyn Ruth Katz, Stanley Balik, Hilda Balik, Harry Friedman, Mac J. Friedman and Ernest Levine.

Katz) appeal from orders granting plaintiff and cross-defendant Continental Baking Company (Continental) a preliminary injunction and denying Katz a preliminary injunction.[2]

We granted a hearing in this court after decision by the Court of Appeal, Second Appellate District, Division Five for the purpose of giving further consideration to the issues raised, including certain issues not discussed by the Court of Appeal. After a thorough examination of the cause, we have concluded that the Court of Appeal has correctly resolved the threshold issue as to the admissibility of extrinsic evidence to explain the instrument granting the easement involved. Accordingly that portion of the opinion of the Court of Appeal, authored by Presiding Justice Kaus and concurred in by Justices Hufstedler and Stephens, dealing with such issue is adopted (with some additional discussion of our own) as and for the opinion of this court on the threshold issue. Such portion of the opinion (with appropriate deletions and additions as indicated) is as follows:[3]

The pivotal issue in this lawsuit is this: did a grant deed dated December 29, 1941, from the predecessor in interest of defendants and cross-complainants William Katz et al., (Katz) to plaintiff and cross-defendant, Continental Baking Company, (Continental) create an easement for ingress and egress merely to a small parcel of land conveyed to Continental by the same deed, or was the easement appurtenant to a much larger parcel also owned by plaintiff.

---

[2]Katz also appeals from an order granting Continental a temporary restraining order. As is pointed out *infra,* the temporary restraining order became merged in the preliminary injunction and the attempted appeal therefrom must be dismissed as moot.

[3]Brackets together, in this manner [ ] *without enclosing material,* are used to indicate deletions from the opinion of the Court of Appeal; brackets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. In so doing, we adhere to a method of adoption employed by us in the past. (*People* v. *Lyons* (1956) 47 Cal.2d 311, 314, fn. 1 [303 P.2d 329]; *Simmons* v. *Civil Service Emp. Ins. Co.* (1962) 57 Cal.2d 381, 383, fn. 1 [19 Cal.Rptr. 662, 369 P.2d 262]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 540, fn. 1 [63 Cal. Rptr. 21, 432 P.2d 717]; *Smith* v. *Anderson* (1967) 67 Cal.2d 635, 637, fn. 1 [63 Cal.Rptr. 391, 433 P.2d 183].)

We illustrate the problem by the sketch below. It is not to scale and omits unnecessary details. Certain facts mentioned in this opinion in later pages will become clearer by reference to the sketch.

These facts are not in dispute: Continental has owned parcel A since 1929 and has operated a bakery thereon. Parcel B was, in 1941, owned by California Consumers Corporation (Consumers). On December 29 of that year Consumers, by grant deed, conveyed to Continental certain interests in real property which in that deed are called "parcel 1" and "parcel 2" respectively. Parcel 1 (see sketch) was described by metes and bounds. After the legal description the deed recites: "said parcel of land has no frontage on any public street of record."

Without any connective words, the deed then goes on to describe parcel 2 as follows: "A non-exclusive easement for ingress and egress over a strip of land 20 feet wide . . . described as follows: . . ." Then there follows a metes and bounds description of the area covered by the easement, which is 232.66 feet long. Consumers reserved to itself the right to build a structure over the easement, with a minimum ground clearance of 18 feet and the right "to support such structure with posts and walls located on such strip in such a way as to interfere as little as practicable with said right of ingress and egress." No dominant tenement is described as such.

By various other conveyances in 1941, 1942 and 1943 Continental acquired property south of parcel 1. This property is designated as parcel C on the sketch.

In 1952 Consumers deeded parcel B to Katz. Located on the westerly portion of that parcel is an office building. Parking for the tenants is provided immediately to the east of the building and west of the easement.

Until 1962 the bakery's west wall was located 20 feet east of the eastern line of the easement and 16 feet south of the northerly property line of parcel A. That year Continental enlarged the bakery by extending it 20 feet further west, right up to the easement. This 20 feet [sic] strip east of the easement had heretofore been used as a driveway.[4] At the same time the 16 feet between the bakery and the street were converted from a grassy, bushy strip to a concrete loading area. It will be observed that if, as Katz contends, the easement serves only parcel 1, it may not be used to reach this loading area from the street.

In January 1963, Katz, by letter, informed Consumers that he considered parcel 2 as an easement appurtenant to parcel 1 only; further, the letter took essentially the same position which he is maintaining at the present time with respect to what he considered an overburdening of the easement by Continental.

Just what if anything transpired between the parties thereafter, we do not know. It is undisputed that in May 1965 Katz threatened to erect a low wall or fence from the north-

[4In his declaration in opposition to Continental's motion for a preliminary injunction and in support of his own motion for a preliminary injunction, Katz states that before Continental enlarged its bakery and thus eliminated its former driveway on its own property, Continental had not used the easement on Katz' property to service, supply or reach any part of *parcel A*, but that since that time Continental has been using the easement to supply and service parcel A and has driven and parked a large number of trucks and trailers thereon in order to load and unload supplies, equipment and goods. (See fn. 13, *infra*.) It was stipulated by the parties that if Leonard Hayes, an employee at Continental for 32 years, and Lloyd Coulter, an employee at Continental since 1953, were called as witnesses, each would testify that of his own personal knowledge Continental used the 20-foot strip by running trucks on it and by walking on it to *all parts of the back land* during the period of time he was employed. Although the foregoing stipulation was entered into after the trial court had given some indication that Continental's motion would be granted, nevertheless Continental did not rest its case until the conclusion of the hearing and, while the record lacks full clarity, it appears that the testimony pursuant to the stipulation was intended to be offered and received in support of Continental's motion as well as in opposition to Katz' motion.]

erly property line along the easterly edge of the easement.
(See sketch.) This wall, while it would not necessarily have
interfered with any longitudinal traffic along the easement,.
would have made it impossible to drive a vehicle directly from
the concrete loading area onto the easement. A few chalk
marks on the ground in the area of the proposed wall, on the
basis of which Continental obtained a temporary restraining
order, thus dramatically and cheaply pinpointed the contro-
versy.

The present appeal is from an order granting a preliminary.
injunction restraining Katz from interfering with Continen-
tal's use of the easement and an order denying a preliminary
injunction to Katz.[5] ▉▉ An appeal from the order granting
Continental a temporary restraining order was also noticed, but,
since that order became merged in the preliminary injunction,
the appeal is moot and must be dismissed. (*Scovill Mfg. Co.* v.
*Skaggs etc. Drug Stores,* 45 Cal.2d 881, 883 [291 P.2d 936].)

At the hearing it developed that the attorneys for Conti-
nental thought that they could base their claim that the ease-
ment was servient to parcel A as well as to parcel 1 on a 1924
deed from the then owner of parcel A to Katz' and Consum-
ers' predecessor in title, Globe Ice Cream Company (Globe).
That deed conveyed parcel B to Globe and contained a clause,
called a condition subsequent, which would have prohibited
Globe from erecting any building or structure on the 20-foot
strip in question. It also provided that the strip was not to be
used "for any purpose except for ingress, egress, parking
facilities and allied uses . . . except fences of concrete, iron,
or concrete and iron, not to exceed 3 feet in height." Katz
successfully objected to any consideration of that deed as an'
easement, claiming correctly that plaintiff's complaint was
not based thereon. An attempt to be permitted to amend the
complaint was unsuccessful.

▉▉ The key ruling at the hearing was to the effect that
plaintiff was permitted to introduce extrinsic evidence to show
that parcel 2 was intended to be an easement for ingress and
egress to parcel A as well as to parcel 1. We think that this
ruling which, as we see it, is the basic legal problem in the
lawsuit, was correct. [Katz' position in this ruling may be

[5The following footnote appears in the opinion of the Court of Appeal
as footnote No. 1.] Katz had sought a preliminary injunction which
would have prevented ʳ ʸ use of the easement for the benefit of parcel
A and, in addition, enjoined certain uses of the easement, which he con-
sidered an overburden, regardless of their purpose.

stated as follows: that when a deed purporting to grant an easement is uncertain or ambiguous as to whether the easement is appurtenant or in gross or, if it is appurtenant and the dominant tenement is not stated, as to the land to which the easement is appurtenant, evidence *aliunde* the deed is admissible to resolve such uncertainty or ambiguity; that, on the contrary, where, as here, there is no question as to whether the easement is appurtenant or in gross and where the dominant tenement is stated in the deed, there is no uncertainty or ambiguity, and extrinsic evidence is not admissible to vary the terms of the deed. In other words, Katz contends that where, as in the instant case, the deed granting the easement also conveys a parcel of land without making any reference thereto as the dominant tenement of the easement, it must be concluded as a matter of law that such parcel is the sole and exclusive dominant tenement and that the easement cannot be construed as appurtenant to any other adjoining land owned by the grantee but not mentioned in the deed.

■ [Easements of way may be either appurtenant or in gross (Civ. Code, § 801, subd. 4, § 802, subd. Five) and where by grant the extent thereof is determined by the terms of the grant. (Civ. Code, § 806; see *Laux* v. *Freed* (1960) 53 Cal.2d 512, 524-525 [2 Cal.Rptr. 265, 348 P.2d 873]; *Whalen* v. *Ruiz* (1953) 40 Cal.2d 294, 302 [253 P.2d 457]; Rest., Property, §§ 471, 482, 483.) "Grants are to be interpreted in like manner with contracts in general, . . ." (Civ. Code, § 1066; see *Laux* v. *Freed, supra,* 53 Cal.2d 512, 523; *Elliott* v. *McCombs* (1941) 17 Cal.2d 23, 29 [109 P.2d 329]; *Paddock* v. *Vasquez* (1953) 122 Cal.App.2d 396, 399-400 [265 P.2d 121]; *Kerr* v. *Brede* (1960) 180 Cal.App.2d 149, 151 [4 Cal.Rptr. 443]; *Wall* v. *Rudolph* (1961) 198 Cal.App.2d 684, 692 [18 Cal. Rptr. 123, 3 A.L.R.3d 1242]; *Kerr Land & Timber Co.* v. *Emmerson* (1965) 233 Cal.App.2d 200, 219 [43 Cal.Rptr. 333].)

■ [Although extrinsic evidence is not permitted in order to add to, detract from, or vary the terms of an integrated written agreement, extrinsic evidence is admissible in order to explain what those terms are. (*Masterson* v. *Sine* (1968) *ante,* pp. 222, 225-226 [65 Cal.Rptr. 545, 436 P.2d 561]; *Nofziger* v. *Holman* (1964) 61 Cal.2d 526, 528 [39 Cal.Rptr. 384, 393 P.2d 696]; see *Laux* v. *Freed, supra,* 53 Cal.2d 512, 522, 527 (Traynor, J., concurring); Code Civ. Proc., §§ 1856,

1860; Civ. Code, § 1647; Rest., Contracts, §§ 230, coms. a, b, 235, cls. (a), (d), coms. a, f, 238, cl. (a), com. a, 242, com. a; 3 Corbin on Contracts (1960) §§ 535, 536, pp. 17-21, 27-30; 9 Wigmore, Evidence (3d ed. 1940) §§ 2461-2463, 2470 et seq.; Witkin, Cal. Evidence (2d ed. 1966) § 730, p. 675; Corbin, *The Interpretation of Words and the Parol Evidence Rule* (1965) 50 Cornell L.Q. 161, 164, 189-190; Farnsworth, *"Meaning" in the Law of Contracts* (1967) 76 Yale L.J. 939, 957-965; Holmes, *The Theory of Legal Interpretation* (1899) 12 Harv.L.Rev. 417.) ▮ Therefore, extrinsic evidence as to the circumstances under which a written instrument was made has been held to be admissible in ascertaining the parties' expressed intentions, subject to the limitation that extrinsic evidence is not admissible in order to give the terms of a written instrument a meaning of which they are not reasonably susceptible. (*Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Nofziger* v. *Holman, supra; Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 315 [38 Cal.Rptr. 505, 392 P.2d 265]; *Imbach* v. *Schultz* (1962) 58 Cal.2d 858, 860 [27 Cal.Rptr. 160, 377 P.2d 272]; see *Estate of Rule* (1944) 25 Cal.2d 1, 20-22 [152 P.2d 1003, 155 A.L.R. 1319] (Traynor, J., dissenting).)] The trial court relied on *Schofield* v. *Bany,* 175 Cal.App.2d 534 [346 P.2d 891], and we have found no case more directly in point. In *Schofield* there was a grant of an easement to an adjoining land owner. The granting clause read as follows: " 'An easement over and along a 20 foot Right of Way, as the same now exists, and which Right of Way leads from the Easterly line of the Northeast quarter of Section 14, in Township 9 North, Range 10 West, M. D. M., and running thence in a general Southwesterly direction to a point on the Easterly line of the Southeast quarter of the Northwest quarter of said Section 14.' " (*Ibid.,* p. 536.) The question was whether or not the easement was appurtenant to the parcel then owned by the grantee. Testimony was admitted that one Dicke, the grantee of the easement, had used the road in question from 1946 until 1952 without any recorded easement for the benefit of the property adjoining the servient tenement. In connection with the sale of his property to one Hemphill, it became necessary for Dicke to acquire a recorded easement which he obtained for $1.00. On appeal it was contended that the extrinsic evidence should not have been admitted. The contention was answered as follows: "Intent of the parties may be ascertained from the language of the deed and from relevant

parol evidence, including that which described the surrounding facts and circumstances existing at the time of the conveyance in question. ■ 'As stated in *Wright* v. *Best,* 19 Cal.2d 368, at page 383 [121 P.2d 702] : ". . . when the deed does not expressly declare an easement to be appurtenant, or when the language of the deed is ambiguous, and it does not clearly appear whether an easement was intended to be in gross or appurtenant to land, evidence *aliunde* the document is admissible to determine the nature of the easement and to establish a dominant tenement. (See also *Elliott* v. *McCombs,* 17 Cal.2d 23, 29 [109 P.2d 329] ; *Balestra* v. *Button,* 54 Cal.App.2d 192, 198 [128 P.2d 816] ; *Eastman* v. *Piper,* 68 Cal.App. 554, 568 [229 P. 1002].)" ' (*W. C. Dillon & Co., Inc.* v. *Barton,* 159 Cal.App.2d 18, 20 [323 P.2d 462].) ■ Or as stated in *Elliott* v. *McCombs, supra,* at page 29, '. . . when the language of a deed is ambiguous, and it does not clearly appear whether the easement was intended to be in gross or appurtenant to land, it is never construed as personal when it may fairly be construed as appurtenant to some other estate. [Citing cases.] The cases which apply this rule also hold that in ascertaining the intention of the grantor, as in any other contract, in the absence of an express declaration, the nature of the easement may be determined by evidence *aliunde* the deed. ■ An easement, therefore, may be appurtenant although the deed does not expressly declare it to be so, and the law favors such an interpretation.' (See also 17 Cal.Jur.2d 92.)" (*Ibid.,* pp. 536-537.)

■ The only distinction between *Schofield* and the present case is that the 1941 deed describes two parcels. That, however, does not make it any clearer that the easement described in parcel 2 was intended to serve only parcel 1. It is arguable that it points away from such an intention, for as long as the draftsman had to describe parcel 1 anyway, it would have been an easy matter to state by appropriate connective words that the easement described in parcel 2 was appurtenant to parcel 1.

It is just as inferable from the four corners of the instrument that the parties wanted to save double notary fees, as it is to conclude that the easement was to be appurtenant to parcel 1 only.

The key ruling that extrinsic evidence was admissible was therefore correct. ■ Unfortunately the manner in which the evidence was admitted was not correct.

Counsel for appellant offered three documents. The first was what looks like a letter from Consumers to Continental, dated October 11, 1940. In that letter there is reference to a pending real estate transaction whereby certain portions of parcel C were to be conveyed by Consumers to Continental. It refers to a preliminary report of the Title Insurance and Trust Company, which report is the second document that was offered by plaintiff. In that report the easement is described as parcel 3 [ ]. [The writer of the letter however referred to the parcel which was the subject of the intended conveyance (shown on the sketch in brackets as "Triangle") as "Parcel #3," and then made the following statement:] "You will note in Title report with respect to Parcel #3 that a reservation was made in the original deed[6] for an easement for private roadway for ingress and egress along a strip 20 ft. wide, lying along the westerly line of the property now owned by the Continental Baking Company, and according to this easement you would have the right of ingress and egress across the 20 ft. strip of our property to the triangular parcel which is to be conveyed to you." The third document purports to be another letter from Consumers to Continental dated November 6, 1940, in which the following appears: "It was our understanding that you were agreeable to promptly entering into escrow, when you could be assured that in effecting transfer to you of the two tracts, that ingress and egress would be available to the triangular parcel designated as #3. Under date of October 11th, we forwarded you preliminary report of the Title Insurance and Trust Company, showing the parcel to be transferred and including the data with respect to easement for private roadway for ingress and egress along the strip 20 ft. wide, lying along the westerly line of the property now owned and to be retained by the California Consumers Corporation." Katz objected to the admission of these documents on several grounds. Among other things he said: ". . . at this time I interpose the objection to each and all of these documents on the ground that there is no foundation laid; on the ground that they are hearsay; . . ."[7] In reply counsel for

---

[6The original deed referred to is the indenture between Pacific Baking Company and Globe Ice Cream Company dated August 11, 1924.]

[7Although no provision for the introduction of testimony at the hearing is expressed in Code of Civil Procedure section 527 (compare Cal. Rules of Court, rule 239 (f)) no objection was interposed on this basis. Several commentators have stated that such testimony is proper (see, e.g., 1 Witkin, Cal. Procedure (1954) p. 876; Civil Procedure Before Trial (Cont.Ed.Bar 1957) pp. 618-619), and utilization of this procedure

plaintiff said: "Well, insofar as the authentication is concerned, I can have a witness testify. In fact, we got them from the general counsel of Continental Baking Company, so they are obviously business records under the liberal interpretation. Insofar as hearsay is concerned, they come within one very clear exception, and that is, they are an admission against interest by a predecessor in title of Mr. Katz, by the California Consumers Corporation, and it is an admission; states in there that they are talking about an easement; that we don't even need a deed because we already have this easment for private roadway purposes. Now, that as an admission would be admissible as an exception to the hearsay rule. . . ." The court then inquired how it was to know that Consumers was the predecessor in interest of Katz. Reference was made to certain declarations which were before the court and the exhibits were then admitted.

We understand that in some legal systems it is assumed that documents are what they purport to be, unless shown to be otherwise. With us it is the other way around. Generally speaking, documents must be authenticated in some fashion before they are admissible in evidence. This was true at the time of the hearing in this case and is true under the Evidence Code (§ 1400 et seq.) although the code in many

is evident in a few appellate cas_s (see, e.g., *E. H. Renzel Co.* v. *Warehousemen's Union* (1940) 16 Cal.2d 369, 370 [106 P.2d 1]; *People* v. *Gordon* (1951) 105 Cal.App.2d 711, 723 [234 P.2d 287]; *Wilms* v. *Hand* (1951) 101 Cal.App.2d 811, 813 [226 P.2d 728]); apparently, however, the parties acquiesced in the proceedings in each case. (Cf. *People* v. *Black's Food Store* (1940) 16 Cal.2d 59, 61 [105 P.2d 361]; *Kendall* v. *Foulks* (1919) 180 Cal. 171, 174 [179 P..886].)

[Drawing analogy from hearings on motions generally wherein it has been rather consistently stated that, although *motions* are usually made and determined on affidavits alone (see *Beckett* v. *Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695, 698, fn. 3 [321 P.2d 749], citing cases), a court may properly hear evidence, when, in its discretion, it deems it necessary in order to correctly resolve the issues (see *Younglove* v. *Steinman* (1889) 80 Cal. 375, 377 [22 P. 189] (motion to dissolve an injunction); *Perez* v. *Perez* (1952) 111 Cal.App.2d 827, 828-829 [245 P.2d 344] (motion to recall execution and strike alimony provisions from interlocutory decree); *Skouland* v. *Skouland* (1962) 201 Cal.App.2d 677, 678 [20 Cal.Rptr. 185] (motion to set aside final judgment of divorce); *Haldane* v. *Haldane* (1962) 210 Cal.App.2d 587, 593 [26 Cal.Rptr. 670]; *Jones* v. *Dolgin* (1963) 220 Cal.App.2d 27, 29 [33 Cal.Rptr. 557] (motion to amend cross-complaint); see also Code Civ. Proc., § 557 (opposition to motion for discharge of writ of attachment); 2 Witkin, *op. cit. supra*, p. 1648), we recognize that "subject to reasonable limitations necessary to conserve the time of the department handling these matters" (1 Witkin, *op. cit. supra*, p. 876), it is within the sound discretion of the court hearing the matter to allow the introduction of additional testimony at the hearing.]

instances eases certain former requirements.[8] In the case at bar the court simply took counsel's word for it that he could have a witness lay the necessary foundation and that he, the attorney, had obtained the documents from the general counsel of Continental so that they were "business records under the liberal interpretation."

While we have just as much faith in counsel's sincerity as the trial court evidently had, such faith does not take the place of testimony or judicial notice.

The reception of the documents in evidence was therefore erroneous.[9] [ ]

This concludes the portion of the opinion of the Court of Appeal adopted by this court. We now proceed to discuss the other issues involved.[10]

While Continental acknowledges that the documents in question were received in evidence without a proper foundation having been laid, it nevertheless contends that the resulting error does not require a reversal of the order granting Continental a preliminary injunction. Its argument runs as follows: that the order should not be reversed unless, on an examination of the entire record, it can be said that the trial court manifestly abused its discretion;[11] that, there being other evidence in the record sufficient to support the order, no abuse of discretion appears; that a balancing of the conveniences of the parties requires the preliminary injunction in order to maintain the status quo pending trial; and that a reversal would lead to an inequitable, impractical and unjust result.

---

[8]The following footnote appears in the opinion of the Court of Appeal as footnote No. 2.] For example, a purported copy of a writing in the custody of a public entity is prima facie evidence of the existence and content of the writing if it purports to be published by the authority of the public entity. (Evid. Code, § 1530.)

[9]Having concluded that the documents under discussion above were erroneously received in evidence, we need not and do not consider Katz' contentions that they were inadmissible because they were: (1) " 'prior negotiations or agreements' which became merged into and were superseded by the Deed," (2) hearsay statements and (3) introduced without having been noticed in the order to show cause or without copies thereof having been included in the order to show cause. No objection was made on the basis that the copies of the documents were not the best evidence. (See Evid. Code, § 1500 (formerly Code Civ. Proc., §§ 1855, 1937, 1938.)]

[10]Under the circumstances, further use of bracket symbols (see fn. 3, *ante*) is unnecessary.

[11]At oral argument, counsel for Continental espoused a rule in substance as follows: that reversal of the order would not be required unless it could be said that the result would have been different had the documents not been received in evidence.

██ "The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion." (*People* v. *Black's Food Store* (1940) 16 Cal.2d 59, 61 [105 P.2d 361].)[12] ██ Discretion is abused in the legal sense "whenever it may be fairly said that in its exercise the court in a given case exceeded the bounds of reason or contravened the uncontradicted evidence." (*Estate of Parker* (1921) 186 Cal. 668, 670 [200 P. 619]; see *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424; *Sharon* v. *Sharon* (1888) 75 Cal. 1, 48 [16 P. 345]; *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].) ██ This rule of review necessarily assumes that the proceedings were otherwise regular and that the pleadings, affidavits, testimony and other evidence were properly before the court. ██ Here, however, another rule has been brought into play since we have concluded, and, indeed as previously noted, Continental has in effect conceded, that error was committed by the trial court in receiving the aforementioned three documents in evidence. We must determine whether such error is prejudicial so as to compel a reversal and to that end decide in the light of the entire record whether in our opinion "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) To this problem we now turn, keeping in mind the issues involved in Continental's motion for a preliminary injunction since our

[12]See e.g., *DeGodey* v. *Godey* (1870) 39 Cal. 157, 167; *Patterson* v. *Board of Supervisors* (1875) 50 Cal. 344, 345; *White* v. *Nunan* (1882) 60 Cal. 406, 407; *Miller & Lux* v. *Madera Canal etc. Co.* (1909) 155 Cal. 59, 62 [99 P. 502, 22 L.R.A. N.S. 391]; *Piper* v. *Hawley* (1918) 179 Cal. 10, 19 [175 P. 417]; *Kendall* v. *Foulks* (1919) 180 Cal. 171, 174 [179 P. 886]; *Thompson* v. *Moore Drydock Co.* (1946) 27 Cal.2d 595, 597 [165 P.2d 901]; *Isthmian S.S. Co.* v. *National Marine etc. Assn.* (1953) 40 Cal.2d 433, 435 [254 P.2d 578], overruled on other grounds, 64 Cal.2d 30, 40 [48 Cal.Rptr. 725, 409 P.2d 949]; *Union Interchange, Inc.* v. *Savage* (1959) 52 Cal.2d 601, 606 [342 P.2d 249]; *Surrey Restaurants* v. *Culinary Workers & Bartenders Union* (1960) 54 Cal.2d 461, 468 [6 Cal. Rptr. 18, 353 P.2d 730]; see generally, 1 Beach on Injunctions (1894) § 117; 2 High on Injunctions (4th ed. 1905) § 1696; 1 Joyce on Injunctions (1909) § 410a; Spelling, Injunctions and other Extraordinary Remedies (2d ed. 1901) § 22.)

inquiry is directed to the impact of the above error upon such issues.

▮ "The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him." (*Miller & Lux* v. *Madera Canal etc. Co.* (1909) 155 Cal. 59, 62-63 [99 P. 502, 22 L.R.A. N.S. 391]; *Kendall* v. *Foulks* (1919) 180 Cal. 171, 174 [179 P. 886]; see *People* v. *Black's Food Store, supra,* 16 Cal.2d 59, 62; *Bomberger* v. *McKelvey* (1950) 35 Cal.2d 607, 612-613 [220 P.2d 729]; *Cal-Dak Co.* v. *Sav-On Drugs, Inc.* (1953) 40 Cal.2d 492, 496 [254 P.2d 497]; *Surrey Restaurants* v. *Culinary Workers & Bartenders Union, supra,* 54 Cal.2d 461, 469.) ▮ The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action. (*Stewart* v. *Superior Court* (1893) 100 Cal. 543, 545 [35 P. 156, 563]; *People* v. *Black's Food Store, supra,* 16 Cal.2d 59, 62.) ▮ Thus, the court examines all of the material before it in order to consider "whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it; . . ." (*Santa Cruz Fair Bldg. Assn.* v. *Grant* (1894) 104 Cal. 306, 308 [37 P. 1034]; see *Hicks* v. *Compton* (1861) 18 Cal. 206, 210; *Porter* v. *Jennings* (1891) 89 Cal. 440, 443-445 [26 P. 965]; *Lagunitas Water Co.* v. *Marin County Water Co.* (1912) 163 Cal. 332, 336 [125 P. 351]; *Wilms* v. *Hand* (1951) 101 Cal.App.2d 811, 815-816 [226 P.2d 728]; see also 27 Cal.Jur.2d, pp. 111-113; 1 High, *op. cit. supra,* § 4; 1 Joyce, *op. cit. supra,* § 109b.) In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. (See *Lagunitas Water Co.* v. *Marin County Water Co., supra,* 163 Cal. 332, 336-337; 1 Witkin, *op. cit. supra,* p. 867; 1 High, *op. cit. supra,* § 5; 1 Joyce, *op. cit. supra,* §§ 109-110; 1 Spelling, *op. cit. supra,* § 25; Rest. Torts, § 936, subd. (2).) As was said in *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 242 [342 P.2d 10], "In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation]."

In the instant case it is clear from the tenor of the three documents which were erroneously received in evidence that they cast some light on the deed dated December 29, 1941, since they, as did the deed, referred to an easement over a 20-foot wide strip along the westerly boundary of Continental's property. In fact they were offered on the ground that they in some manner explained a possibile ambiguity in the 1941 deed. The offer appears to have been made upon the following theory: that the three documents showed an easement along the same 20-foot strip already reserved under an earlier deed and thus in existence *before* the deed of December 1941; that according to the three documents this easement could be used to reach the triangle (see sketch), the subject of the then pending real estate transaction; that such easement was therefore *not exclusively* appurtenant to parcel 1; and that it was arguable that under the terms of the 1941 deed it was appurtenant to parcel A as well as to parcel 1 (see sketch). It thus appears that the three documents erroneously admitted were relevant on the issue of the probability of Continental's ultimate success in the assertion of its rights. On the other hand, they were wholly irrelevant on the issue of the comparative injuries probably resulting from the granting or denial of the injunctions.

By granting Continental's application for a preliminary injunction, the trial court resolved this issue of the probability of ultimate success favorably to Continental but the record fails to disclose any express indication by the court of the extent, if any, to which it relied upon the improper evidence. The respective applications for a preliminary injunction were heard upon the verified pleadings of the parties, affidavits in support of and in opposition to the applications, and oral testimony adduced at the hearing. Thus the record before the court contains other competent evidence showing or from which it could be inferred that the easement was appurtenant to parcel A as well as to parcel 1 and thus bearing directly upon the issue of the probability of Continental's ultimate success. This evidence consisted of three deeds and testimony as to the prior use of the easement.

The first of the three deeds referred to above was the 1924 deed from Pacific Baking Company (Pacific—predecessor in interest of Continental) as grantor to Globe Ice Cream Company (Globe—predecessor in interest of Katz). A copy of this deed is attached to, and incorporated by reference in, Conti-

nental's answer to Katz' cross-complaint and also attached to and incorporated in Katz' supplemental affidavit in opposition to Continental's application for an injunction and in support of his own application. It is beyond question then that the 1924 deed was before the court. As has been previously stated, this deed conveyed parcel B to Globe subject to a condition subsequent under which the 20-foot strip was not to be used "for any purpose except for ingress, egress, parking facilities and like uses" with the further provision that the rear portion of the strip "may also be used for a railroad spur track. . . ." It was Continental's position before the trial court that the 20-foot strip referred to therein, although the subject of a condition subsequent, was in fact reserved as an easement for the benefit of Pacific, the grantor, and its successors in interest (including Continental) and that it was intended to be and was used as an easement.

The other two deeds (which may be taken together) were the 1926 deeds from Globe as grantor to Pacific Electric Railway Company. The essential facts of these conveyances are found in the supplemental declaration of Katz in opposition to Continental's motion for a preliminary injunction and in support of his own motion for a preliminary injunction and in the copies of the two deeds themselves attached to and incorporated by reference in Continental's answer to Katz' cross-complaint. It thus is clear that these two deeds also were before the trial court. Together they constituted a grant by Globe of an easement for railroad purposes; such grant was in accordance with the provision therefor found in the deed from Pacific (Continental's predecessor) to Globe (Katz' predecessor). The railroad easement ran east and west across parcel C (see sketch) at its widest point, coincided more or less with the easement allegedly reserved in the 1924 deed from Pacific to Globe, and in turn included a reservation by Globe of an easement *across the railroad right of way* for access to a triangular piece of land (designated "Triangle" on the sketch). It was Continental's position below that this was merely an extension of the easement created in 1924. It is contended that this "reservation of easement was apparently a reiteration and restatement of the existence of a portion of the pre-existing easement created in the original grant of land to Globe, . . ."

As we have said, in addition to the foregoing evidence as to the three deeds there is in the record the stipulated testimony of Hayes and Coulter as to the prior use of the easement over

a period of time extending as far back as 1933 (see fn. 4, *ante*). All of the foregoing evidence bearing upon the probability of Continental's prevailing in the action was properly before the court.

Thus the same 1924 deed which was the subject of the three documents erroneously received in evidence was itself in the record before the court and available for the court's own interpretation. Accordingly, in determining the reasonable probability of Continental's ultimate success in the assertion of its rights under the 1941 deed, the court could have properly concluded from the reservation in the *1924* deed and from the testimony as to the prior use of the 20-foot strip in connection with parcel A, as well as from the reservation of the easement in the 1926 deeds, that the easement granted in the *1941* deed was intended to be appurtenant to parcel A as well as to parcel 1. Since the court had the 1924 deed and related evidence properly before it, the erroneously admitted evidence was at best cumulative. Indeed, we would think that the court was in a better position to assess the significance of the deed and evidence than the authors of the three documents who sought to comment on the deed.

Additionally, on the broader issue of Continental's entitlement to a preliminary injunction, the record shows that the denial of its motion for an injunction would have resulted in substantial injury to Continental as compared with any injury which might result to Katz from granting Continental's motion. The erection by Katz of the proposed wall would have entirely prevented Continental from using the easement to reach the concrete loading area at the front of its premises. On the other hand, there was evidence before the court that the easement had not been subject to heavy use and that immediately before the trial such use had been further curtailed by Continental.[13] In the light of the entire record, we cannot say that it is reasonably probable that a result more

---

[13]Katz' cross-complaint and declarations in opposition to Continental's motion for a preliminary injunction and in support of his motion for a preliminary injunction stated generally that since January 28, 1963, Continental has continued to use parcel 2 for driving trucks and other vehicles thereon and thereover; for receiving and shipping, and loading and unloading large quantities of material, equipment and supplies; for parking; for access to the bakery's transformer pad, and rear exit doors (located on parcel A adjacent to the southeast corner of parcel 2); and for servicing the bakery and bakery building. However, witnesses for Continental testified (see fn. 4, *ante*) that only two large trucks per day used the easement for access to and from the concrete loading area, one in the morning and one in the late afternoon; that during the year before the hearing Continental, at Katz' request, ceased

favorable to Katz would have been reached in the absence of the above error. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

We next dispose of a miscellany of attacks by Katz on the preliminary injunction.

 *First*: Katz contends that the complaint and declarations filed by Continental were insufficient and inadequate as a matter of law to support the order granting the preliminary injunction, because (1) the complaint was verified by one of the attorneys for the plaintiff and (2) the complaint and declaration in support of plaintiff's application for a preliminary injunction failed to allege or set forth specific facts, averred mere conclusions of law and were based on hearsay. A verified complaint or affidavit may be used to support an order for a preliminary injunction. (Code Civ. Proc., § 527.) Although an attorney's verification under some circumstances cannot be used as an *affidavit* to support an application for a preliminary injunction (see the 1963 amendment to Code Civ. Proc., § 446), section 446 provides that the attorney may verify the complaint if the facts are *within his own knowledge*: ". . . it shall be by the affidavit of a party, unless . . . the facts are within the knowledge of his attorney or other person verifying same." (See *Beard* v. *Beard* (1940) 16 Cal.2d 645, 649 [107 P.2d 385]; *Silcox* v. *Lang* (1889) 78 Cal. 118, 121-122 [20 P. 297].) Therefore, even assuming the complaint was verified by Continental's attorney (the substance of the verification is not included in the record on appeal), still it may be used in support of a motion for a preliminary injunction if it otherwise shows satisfactorily that sufficient grounds exist therefor.

 The allegation "Plaintiff is . . . , and since December 29, 1941, has been the grantee of a non-exclusive easement over a strip of land 20 feet wide overlying the premises known as 9348 Santa Monica Boulevard" was admitted in Katz' verified answer, and the deed granting the easement was incorporated by reference therein. Katz may not now complain that such an allegation cannot be used to support a preliminary injunction. Other asserted failures of Continental

---

stopping its trucks on the easement; that there were seldom more than two or three trucks at any one time on the concrete loading area, the easement and the receiving end of Continental's establishment taken together (the bakery's receiving doors are located approximately where parcel A meets parcel 1); and that those trucks were so far back from the driveway proper that they did not interfere with the access by Katz or his tenants.

to properly set forth sufficient facts are not spelled out by Katz. An examination of the record indicates that the remainder of the complaint and the declaration show satisfactorily that sufficient grounds exist for the granting of the injunction to support the order.

*Second*: Katz contends that the owners of the dominant tenement cannot materially increase the burden of the easement on the servient estate; that the owner of the servient estate has the right to use the land subject to a nonexclusive easement for any purpose that does not unreasonably interfere with the right of the owner of the dominant estate; and that the owner of the servient estate may construct a fence along the easement right of way so long as the fence is not placed so as to be inconsistent with the right of the owner of the dominant estate.

All of the foregoing are premised on the fact that the easement is appurtenant to parcel 1 *only* and is *solely* for longitudinal travel thereon. Therefore, these contentions were necessarily disposed of when the trial court found that there was a "reasonable probability in this case that the easement involved with respect to the deed of December 29, 1941, may be construed to be appurtenant to the land previously owned by the plaintiffs."

*Third*: It is claimed that Continental is barred from obtaining an injunction by the doctrine of unclean hands because of omission from its pleadings and from the maps and drawings annexed thereto of any reference to parcel 1. Katz contends that there was "a deliberate and studied purpose of misleading the Court into believing that the easement was appurtenant to . . . Parcel A." This contention was not raised prior to or at the hearing on the issue. If it had been raised it would have been considered by the court in balancing the equities of the parties. However, since the issue of unclean hands was not before the trial court, Katz may not now raise it for the first time on appeal. (See *Estate of Westerman* (1968) *ante,* pp. 267, 278-279 [66 Cal.Rptr. 29, 437 P.2d 517], citing cases; *Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P. 2d780].)

*Fourth*: Katz contends that the preliminary injunction is void for uncertainty and overbreadth.

The order enjoins Katz "from constructing or erecting any wall, fence or signpost, or any other structure whatsoever, or doing any act of preparation for said construction or erection, and from obstructing, encroaching upon or interfering with

plaintiff and cross-defendant's use for ingress and egress of pedestrian and vehicular traffic, in any manner whatsoever, on [description of parcel 2].''

An injunction must not be uncertain or ambiguous and defendant must be able to determine from the order what he may and may not do. (*In re Berry* (1968) *ante,* pp. 137, 156 [65 Cal.Rptr. 273, 436 P.2d 273]; *City of Vernon* v. *Superior Court* (1952) 38 Cal.2d 509, 513 [241 P.2d 243]; *Gelfand* v. *O'Haver* (1948) 33 Cal.2d 218, 222 [200 P.2d 790]; *Weber* v. *Superior Court* (1945) 26 Cal.2d 144, 148 [156 P.2d 923]; *Brunton* v. *Superior Court* (1942) 20 Cal.2d 202, 205 [124 P.2d 831]; *Plummer* v. *Superior Court* (1942) 20 Cal.2d 158, 164 [124 P.2d 5]; see generally, 27 Cal.Jur.2d pp. 205-207; Civil Procedure Before Trial, *op. cit. supra,* p. 633; see also, Rest., Torts, § 943, com. h.) However, in determining whether a defendant has been given sufficient notice of the conduct proscribed, the language of the injunction must be interpreted in light of the record which discloses the kind of conduct that was sought to be enjoined. (*Machado* v. *Machado* (1962) 58 Cal.2d 501, 508 [25 Cal.Rptr. 87, 375 P.2d 55]; see *City of Vernon* v. *Superior Court, supra,* 38 Cal.2d 509, 514; *Gelfand* v. *O'Haver, supra,* 33 Cal.2d 218, 222; *Consolidated Peoples Ditch Co.* v. *Foothill Ditch Co.* (1928) 205 Cal. 54, 59 [269 P. 915].) Katz contends that, although the deed granting the easement specifically provides for the right to build a structure over the easement and to support such a structure with posts and walls on the strip, the injunction specifically proscribes such activity. The order of the trial court in this case was clearly intended to preserve the status quo pending a trial on the merits. In the light of the record we must conclude that Katz has been given proper notice as to what conduct has been enjoined; he must not obstruct ingress and egress from the driveway to Continental's concrete loading area. When viewed in this light the injunction is neither uncertain nor overbroad.

Finally, we reject as being without merit Katz' broad claim that the trial court abused its discretion in granting Continental and denying Katz a preliminary injunction. We have already pointed out in detail the evidence justifying the court's action. It is necessary only to say in summary that such evidence supported the court's determination as to the reasonable probability of Continental's success and the court's balancing of the equities of the parties in favor of Continental after a consideration of the injuries which each

might incur as a result of the denial of their respective motions. We find no abuse of the court's discretion.

The attempted appeal from the order granting the temporary restraining order is dismissed. The orders grating plaintiff a preliminary injunction and denying such relief to defendants are affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.