[No. A029880. First Dist., Div. Two. Aug. 11, 1986.]

SAHEDA ZAKARIA et al., Plaintiffs and Respondents, v.
LINCOLN PROPERTY COMPANY NO. 415, LTD. et al.,
Defendants and Appellants.

502

COUNSEL

Robert A. Dimino for Defendants and Appellants.

Michael Rawson, Margarita Altamirano and Thomas Weathered for Plaintiffs and Respondents.

OPINION

**KLINE, P. J.**—Defendants, owners of the Greenhaven Apartments (Greenhaven) in Union City,[1] appeal from a preliminary injunction granted to plaintiffs Saheda Zakaria and her five minor children which restrained defendants from utilizing a policy of permitting no more than four persons to occupy a three-bedroom apartment with respect to rental units made available to persons eligible for "Section 8" housing assistance under the United States Housing Act of 1937. We affirm.

The factual background giving rise to this litigation is not in dispute.

In 1982 Union City (the City) approved a bond issue to finance the development of Greenhaven pursuant to Health and Safety Code section 52075 et seq., which provides for the issuance of revenue bonds to finance the construction or development of multifamily rental housing. The statutory scheme requires a developer to reserve at least 20 percent of the housing units for low and very low income households, which are defined as persons and families whose income does not exceed the qualifying limits for lower income families as established pursuant to section 8 of the United States Housing Act of 1937 (42 U.S.C. § 1437f).[2] (Health & Saf. Code, §§ 50079.5, 50105 and 52080, subd. (a)(1).) As a condition of financing Greenhaven, defendants were required to enter into a regulatory agreement with the City. (Health & Saf. Code, § 52080, subd. (b).)

To comply with the provisions of the Health and Safety Code authorizing the financing of Greenhaven, the City and defendants executed a regulatory

---

[1] Defendant Lincoln Property Company No. 415, Ltd., is a limited partnership which is the sole general partner of defendant Lincoln Fair Ranch Associates Limited, a limited partnership which owns and operates Greenhaven Apartments. Apparently Greenhaven is managed through defendant Lincoln Property Company N.C., Incorporated.

[2] Pursuant to section 8, the Secretary of Housing and Urban Development is authorized to enter into contracts with public housing agencies who may then enter into contracts to make assistance payments to owners of dwellings "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing . . . ." (42 U.S.C. § 1437f(a) and (b)(1).) Very low income families are those whose incomes do not exceed 50 percent of the median income for the area, as determined by the Secretary. (42 U.S.C. § 1437f(f)(2).)

agreement and declaration of restrictive covenants and a supplemental regulatory agreement and declaration of restrictive covenants in February 1983. Both agreements expressly provide that their purpose is to promote the development of adequate multifamily housing for persons of low and moderate income within the City and fulfill the public purpose of assisting persons of low and moderate income to afford the costs of decent, safe and sanitary housing. In section 2(b)(ii) of the Supplementary Agreement defendants promised to "accept rental applications for such [low income] units on a priority basis from Very Low Income Households qualified for housing assistance payments for existing housing under the United States Housing Act of 1937 or any similar housing subsidy program as may be now or hereafter established." Pursuant to the agreements, defendants built and completed Greenhaven by August 16, 1983.

During the month of July 1983, plaintiffs were notified by the Housing Authority of Alameda County that Greenhaven would be accepting applications for apartments and that section 8 certificate holders were eligible. They then applied to defendants to rent a three-bedroom apartment at Greenhaven.[3] Plaintiffs informed defendants that they were very low income and had been issued a section 8 certificate. Defendants refused to accept plaintiffs' application, stating that although a three-bedroom apartment was available it was defendants' policy not to allow more than four persons to reside in a three-bedroom apartment.

Plaintiffs were unable to find another three-bedroom unit in the vicinity for which a landlord would accept section 8 assistance payments. They requested a four-bedroom section 8 certificate from the Alameda County Housing Authority but were informed that federal regulations prohibited the housing authority from issuing a four-bedroom certificate to a family of plaintiffs' size, age and gender mix.

Plaintiffs' attorneys subsequently contacted defendants and requested that they accept plaintiffs' application for a three-bedroom apartment. After defendants responded that they would not change their policy, this action was commenced on August 16, 1984.

Plaintiffs' verified complaint alleged that defendants' policy of not permitting more than four persons to occupy a three-bedroom unit (1) violates the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), (2) constitutes a breach of the contract between defendants and the City, of which plaintiffs are

---

[3]Saheda Zakaria's household then consisted of herself and five children, ranging in age from three to twelve, of whom two are male and three are female. Plaintiffs are Asian Indians.

third party beneficiaries, (3) violates the United States Fair Housing Act (42 U.S.C. § 3601 et seq.), (4) constitutes a denial of equal protection under article I, section 7 of the California Constitution, and (5) constitutes an unlawful business practice.

The complaint sought as relief a declaration that defendants' occupancy standards violate the rights of plaintiffs and members of the general public; a preliminary and permanent injunction prohibiting defendants from continuing their practice of limiting occupancy at Greenhaven to households smaller than permitted by state and local housing codes; a preliminary injunction ordering defendants to refrain from renting the next available three-bedroom apartment during the course of the litigation and an order requiring that such apartment be rented to plaintiffs upon their prevailing in the litigation; a permanent injunction ordering defendants to request the Alameda County Housing Authority to provide the names and addresses of all five-and six-member households who are awarded section 8 certificates after July 16, 1983, and to notify each such household that its application for residency at Greenhaven will be accepted; and an order requiring defendants to specifically perform the regulatory agreement between defendants and the City and thereby (1) accept applications from all persons eligible for section 8 housing assistance, and (2) refrain from rejecting such applicants on the basis of their household size unless such occupancy limitations conform to those enacted pursuant to the United States Housing Act of 1937. Plaintiffs also sought damages under some of their causes of action as well as costs and attorney's fees.

On the date the complaint was filed plaintiffs obtained an order to show cause why a preliminary injunction should not issue. Plaintiff Saheda Zakaria filed a declaration in support of the motion for a preliminary injunction. In it she stated that she and her children reside in a three-bedroom apartment in Union City at a rental rate of $680 per month plus utilities, with the family's sole income being $881 from the aid to families with dependent children (AFDC) program. It was her understanding that if she were permitted to live at Greenhaven under the section 8 program, she would have to pay no more than 30 percent of her income for rent.

Plaintiffs also established in support of their motion that Union City has adopted the Uniform Housing Code (UHC) with only a few amendments not relevant here. Section 503(b) of the UHC provides in pertinent part: "Every dwelling unit shall have at least one room which shall have not less than 150 square feet of floor area. Other habitable rooms, except kitchens, shall have an area of not less than 70 square feet. When more than two persons occupy a room used for sleeping purposes, the required floor area

shall be increased at the rate of 50 square feet for each occupant in excess of two."

Plaintiffs submitted a declaration of William Reed, a building inspector for the County of Alameda. He stated that he had reviewed a floor plan, a copy of which was attached to his declaration, which purported to be of a three-bedroom unit at Greenhaven. Reed determined that under section 503(b) of the UHC eight persons would be permitted to occupy the unit, three in each of bedrooms numbers 1 and 2, and two in bedroom number 3.

Plaintiffs also submitted a declaration of Ophelia Basgal, the Executive Director of the Housing Authority of Alameda County. She supervises the allocation of housing assistance payments distributed to low income tenants pursuant to the section 8 program. Section 8 assistance is allocated by providing eligible households with a certificate entitling them to have their rent subsidized by the housing authority. Along with several other factors, the housing authority must approve the number of bedrooms the tenant's unit must have and that number is specified on the certificate. The number of bedrooms alloted is determined by application of the housing authority's statement of policy and the housing quality standards issued by the Department of Housing and Urban Development (HUD). Basgal explained that a family of the sex and age composition of Saheda Zakaria's family will be given a three-bedroom certificate on the assumption that the adult and youngest daughter will share one room while the remaining two daughters will share a room, as will the two sons.

Plaintiffs and defendants both filed points and authorities and a hearing was held on September 11, 1984. On October 24, 1984, the trial court filed its order granting a preliminary injunction. That order provides in relevant part that the defendants be enjoined from: "Rejecting on the basis of household size, the applications for tenancy at Greenhaven Apartments of named plaintiffs or other persons eligible for 'Section 8' housing assistance pursuant to the United States Housing Act of 1937 *unless* the number of persons in the applicant's household exceeds the maximum number of persons permitted to occupy a three-bedroom unit under 24 C.F.R. §§ 882.109(c)(2), 882.209(b)(2) and 882.209(i).[4] For purposes of this order, the application

---

[4]These provisions of the Code of Federal Regulations are part of the HUD regulations governing the section 8 program. Section 882.109 is entitled "Housing quality standards," and section 882.209 is entitled "Selection and participation."

Section 882.109(c)(2) provides in pertinent part: "The dwelling unit shall contain a living room, kitchen area, and bathroom. The dwelling unit shall contain at least one bedroom or living/sleeping room of appropriate size for each two persons. Persons of opposite sex, other than husband and wife or very young children, shall not be required to occupy the same

of a family that has been issued a Certificate of Family Participation by the Housing Authority of Alameda County may only be rejected on the basis of household size if the number of bedrooms designated on the certificate is greater than three." This timely appeal followed.

■ The parties correctly agree that the standard of review on appeal from the granting of a preliminary injunction is whether the trial court abused its discretion. (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121]; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889]; *People* v. *Black's Food Store* (1940) 16 Cal.2d 59, 61 [105 P.2d 361].) "Discretion is abused in the legal sense 'whenever it may be fairly said that in its exercise the court in a given case exceeded the bounds of reason or contravened the uncontradicted evidence.' [Citations.]" (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d at p. 527.) "Further, the burden rests with the party challenging the injunction to make a clear showing of an abuse of discretion. [Citations.]" (*IT Corp.* v. *County of Imperial, supra,* 35 Cal.3d at p. 69.)

■ The granting of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. The trial court must balance the respective equities of the parties, considering the probability of the plaintiff prevailing in the case and denying a preliminary injunction unless there is a reasonable probability that the plaintiff will be successful on the merits. (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d 512, 528.) "'In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation].'" (*Ibid.,* quoting *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 242 [342 P.2d 10].)

■ It is apparent from the trial court's order and the transcript of the hearing on the motion for preliminary injunction that the court based its

---

bedroom or living/sleeping room."

Section 882.209(b)(2) provides in pertinent part: "The PHA [Public Housing Authority] shall enter on the Certificate the smallest number of bedrooms consistent with standards established by the PHA for determining the number of bedrooms for Families of different sizes and compositions. The PHA's standards shall provide for the minimum commitment of housing assistance payments while avoiding overcrowding and shall be consistent with the applicable housing quality standards (see § 882.109(c))."

Section 882.209(i) provides in pertinent part: "(1) Regardless of the number of bedrooms stated on the Certificate, no otherwise acceptable unit shall be disapproved on the ground that it is too large for the Family . . . . [¶] (2) The PHA may not prohibit a Family from renting a unit with fewer bedrooms than the number stated on the Certificate. However, the unit must meet the space requirement of § 882.109(c) . . . ."

order upon its view that plaintiffs were likely to succeed on the merits of their claim that defendants' policy violated the contract between defendants and the City, set forth in the regulatory agreement and supplemental regulatory agreement, of which plaintiffs are third party beneficiaries.[5] We conclude that the trial court did not abuse its discretion in granting the preliminary injunction on this basis and do not address the issues which plaintiffs seek to raise here with respect to their other causes of action.

In support of their assertion that they are third party beneficiaries of the contract between defendants and the City, plaintiffs rely upon *Zigas* v. *Superior Court* (1981) 120 Cal.App.3d 827 [174 Cal.Rptr. 806], certiorari denied (1982) 455 U.S. 943 [71 L.Ed.2d 655, 102 S.Ct. 1438]. In *Zigas* another division of this court held that tenants of apartments financed by federally insured mortgages were third party beneficiaries of a contract between their landlords and HUD that obligated the landlords not to charge rental rates above a HUD-approved rent schedule. The *Zigas* court distinguished *Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394 [113 Cal.Rptr. 585, 521 P.2d 841], which held that residents of an East Los Angeles area could not sue as third party beneficiaries under a contract between Socoma and the Secretary of Labor for Socoma to hire and train "hard core unemployed", determining that the tenants in *Zigas* were the direct beneficiaries of the contract involved while the plaintiffs in *Martinez* were incidental beneficiaries without standing to sue of a contract designed to improve the East Los Angeles neighborhood as one aspect of a "broad, long-range objective." (*Zigas* v. *Superior Court, supra,* 120 Cal.App.3d at pp. 836-838.) It appears clear that holders of Section 8 certificates are direct beneficiaries of the contract here and, like the tenants in *Zigas*, entitled to sue as third party beneficiaries.

Additionally, plaintiffs' position is supported by *Holbrook* v. *Pitt* (7th Cir. 1981) 643 F.2d 1261, holding that tenants of housing developments who receive housing assistance payments under section 8 are third party beneficiaries of contracts between their landlords and HUD providing for HUD to make rental payments on behalf of eligible low income tenants. (*Id.,* at pp. 1265, 1273 and cases there cited.)

Defendants have not directly argued in their brief to this court that plaintiffs do not have standing to sue as third party beneficiaries and they cite

---

[5]The trial court indicated at the hearing that it did not believe it likely that plaintiffs would succeed on the merits of their other causes of action.

no authority which would support such a position. They argue that even if plaintiffs do have standing to sue they cannot prevail because there has been no breach of contract.[6]

Defendants concede that the occupancy of plaintiffs' family in a three-bedroom apartment at Greenhaven is well within the standards of the UHC and comports with the standards prescribed by HUD for holders of section 8 certificates.[7] Nevertheless, despite the fact that the supplemental regulatory agreement specifically provides that defendants shall accept rental applications from very low income households qualified for section 8 assistance, defendants contend that their policy does not breach the contract because they "are authorized to use other qualifications for tenancy by the specific language of the contract and under the aegis of California Government Code section 12995, California Health and Safety Code [section] 52080, and H.U.D. implementing regulations found at 24 C.F.R. [section] 882.514."

■ The section of the supplementary regulatory agreement which provides that defendants shall accept applications from very low income tenants qualified for section 8 assistance (Section 2(b)(ii)) also provides that if "no applicant that qualifies as a Very Low Income Household who holds or is entitled to government subsidy . . . and *otherwise* [meets] the qualifications for tenancy has applied [italics added]," a unit may be rented to other persons. Defendants urge that the reference to *otherwise qualified* allows them to impose the limitation in question. We do not believe this language permits the imposition of a qualification in conflict with HUD Section 8 criteria, for that would substantially impair the essential purpose of the agreement to provide low income housing to persons eligible for housing assistance.

■ Government Code section 12995 is part of California's statutory scheme to ensure fair employment and housing practices. Defendants do not explain how that section supports their position. We assume they rely

---

[6]Defendants also devote a substantial portion of their brief to the proposition that adherence to their occupancy limitation is an exercise, and a proper exercise, of the "police power". They argue, without citation of authority, that they "have been given the imprimatur of local government to establish a housing complex ·which rises above the bare minimum standards adopted in the Uniform Housing Code." We know of no authority to support the view that defendants are exercising the police power.

[7]As set forth in footnote 4, *ante*, 24 Code of Federal Regulations, sections 882.109(c)(2) and 882.209(b)(2), cited in the trial court's order, prescribe those standards. We do not see the relevance of 24 Code of Federal Regulations, section 882.209(i), also cited in the trial court's order, to the issues presented herein.

upon the provision that the statutory scheme does not prevent selection for housing based upon factors other than race, color, religion, sex, marital status, national original or ancestry. (Gov. Code, § 12995, subd. (c).) We do not see how this language excuses defendants from compliance with the terms of their contract with the City.

■ Defendants contend that their policy is permissible because Health and Safety Code section 52080 provides that a landlord such as defendants must accept Section 8 tenants on the same basis as all other tenants. Plaintiffs contend that that section merely means that such landlords cannot apply a selection criteria to holders of section 8 certificates "that is more burdensome that the criteria applied to all other prospective tenants," as provided in Health and Safety Code section 52080, subdivision (a)(3). In 1985, the Legislature deleted the requirement that federally subsidized tenants be accepted on the same basis as all other prospective tenants. The Legislative Counsel's Digest merely noted that the deletion was being made. (See Legis. Counsel's Dig., Assem. Bill No. 2002, Stats. 1985, ch. 1275.) We deem this deletion confirmative of the legislative intent to only prohibit the imposition of more burdensome requirements upon subsidized tenants.

Defendants fail to explain how 24 Code of Federal Regulations section 882.514 is helpful to them. That provision applies to special procedures for certain rehabilitation programs and has no application to this case.

■ Defendants also contend that the trial court erred because Civil Code section 3423 provides that an injunction cannot be granted to prevent the breach of a contract the performance of which would not be specifically enforced. This contention lacks merit since the supplemental regulatory agreement provides in section 9(i) that in the event of default the City may proceed by mandamus or other proceeding in law or equity to require the defendants to perform their obligations. Thus the contract can be specifically enforced.

■ We therefore conclude that the trial court properly exercised its discretion in determining that plaintiffs are likely to succeed on the merits of their claim. Additionally, we conclude that the trial court could properly determine that plaintiffs and others similarly situated, who live in poverty and spend most of their income on housing without the assistance of subsidies, would more likely be injured by the denial of a preliminary injunction than defendants would by the granting of the injunction. Defendants have made no meaningful argument in support of the proposition that they are substantially damaged by this injunction.

The order granting a preliminary injunction is affirmed.

Rouse, J., and Smith, J., concurred.