Filed 6/4/15  Raju v. County of LA Dept. of Mental Health CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KARIAVANDAN RAJU,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES DEPARTMENT OF MENTAL HEALTH,<br><br>    Defendant and Respondent. | B252169<br><br>(Los Angeles County<br>Super. Ct. No. BC481742) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.


        Duchrow & Piano, David J. Duchrow and Jill A. Piano for Plaintiff and Appellant.


        McCune & Harber, Christy L. O'Donnell, Heather M. Bean and Grace H. Kang for Defendant and Respondent.

                    _____

# INTRODUCTION

Plaintiff Kariavandan Raju sued his employer, the County of Los Angeles Department of Mental Health (the Department), for discrimination and retaliation under the Fair Employment and Housing Act, Government Code section 12960, *et seq.* (FEHA). The trial court granted the Department's motion for summary judgment, concluding the Department had nondiscriminatory and nonretaliatory reasons for the challenged employment actions and Plaintiff failed to exhaust his administrative remedy with respect to some of his claims. We reach the same conclusion and affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

1.     *Background*

Plaintiff is of Indian racial descent and national origin. He has a Ph.D. in social work and has been a licensed clinical social worker since 1997. Plaintiff is employed by the Department as a Psychiatric Social Worker II, a position he has held since 2000.

On April 8, 2011, Plaintiff filed a charge of discrimination with the Department of Fair Employment and Housing (DFEH), alleging that from July 11, 2004 to the present, he had been "denied a promotion to Supervising Psychiatric Social Worker." On March 28, 2012, Plaintiff filed the instant action against the Department. The operative second amended complaint alleges that, between April 2006 and September 2011, the Department denied Plaintiff eight promotions because of his race and national origin, and in retaliation for filing a DFEH complaint, all in violation of FEHA.

---

[1]     The facts are drawn primarily from the Department's separate statement of undisputed facts, which Plaintiff either conceded or did not effectively counter with admissible evidence. (See, e.g., *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 340, fn. 1; *R. P. Richards, Inc. v. Chartered Construction Corp.* (2000) 83 Cal.App.4th 146, 151, fn. 3.) To the extent Plaintiff offered additional or competing facts on a material issue, we state the evidence admitted by the trial court in the light most favorable to Plaintiff, as the nonmoving party, in accordance with the applicable standard of review for summary judgments. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

2.    *The Internal Promotion Process for Permanent Employees*

The Department uses a competitive examination process to award internal promotions. The Department fills Supervising Psychiatric Social Worker vacancies from an eligibility list of qualified permanent employees who successfully pass an examination administered by the Exams Analyst. The Department ranks candidates on the eligibility list in five "bands" based upon the candidates' training and experience and an Appraisal of Promotability. Candidates in Band 1 are ranked the highest; Band 5, the lowest.

When there is a vacant position, the Department hiring supervisors interview candidates from the eligibility list, beginning with Band 1. Supervisors are permitted to interview candidates in a sequentially lower band if: (1) there are fewer than five candidates in the current band; (2) after a reasonable time, candidates in the current band do not respond to the supervisor's contact; or (3) a candidate in the current band has declined the position and/or there are no other candidates in the band. Before supervisors may access candidates in a lower band, they must contact the Selection Unit and explain why they were unable to promote a candidate from the current band.

Based on the interviews and application materials the hiring supervisors determine the most qualified candidate for the position. Before the Department offers the position to the selected candidate, a separate supervisor must approve the promotion.

3.    *Plaintiff Interviews for Five Positions from 2006 to 2009*

In April 2006, Plaintiff interviewed for a vacant Supervising Psychiatric Social Worker position at the Men's Central Jail. However, after assessing the specific needs of the subject program, the Department determined the vacant position did not require a supervisor and could be filled by a Psychiatric Social Worker. In May 2006, the Department advised Plaintiff of its reassessment and decision to fill the position with a Psychiatric Social Worker.

In August 2006, Plaintiff interviewed to be a "Team Leader." Team Leader is a functional title and not an official position with a civil service classification. Though Team Leaders may assume certain administrative or supervisory responsibilities, they do not receive any additional pay or benefits, and the Team Leader retains his or her official job title and classification. Because of its unofficial nature, Team Leader vacancies are not subject to the competitive selection process used to fill Supervising Psychiatric Social Worker positions. After interviewing Plaintiff, the Department did not appoint him to be a Team Leader in 2006.

In June 2008, Plaintiff again interviewed to be a Team Leader. At the time, the Department did not require Team Leaders to be licensed social workers, and the Department appointed two unlicensed individuals instead of Plaintiff. After these appointments, Plaintiff filed a complaint with his union, challenging the practice of appointing unlicensed social workers as Team Leaders. The Department and Plaintiff's union agreed Team Leaders must be licensed, and removed the unlicensed individuals from their appointments.

In January 2009, Plaintiff interviewed to be an interim Team Leader, while the serving Team Leader was on a temporary leave of absence. After Plaintiff's interview, the serving Team Leader's subordinate offered to temporarily "fill in" as interim Team Leader until her superior returned. In view of her familiarity with the serving Team Leader's responsibilities, the Department decided to appoint the subordinate instead of Plaintiff.

In March 2009, Plaintiff and several others interviewed for a vacant Team Leader appointment. The Department appointed a candidate who had four years of supervisory experience instead of Plaintiff.

4

4. *Plaintiff Interviews for Three Positions from 2010 to 2011 and Files a Charge of Discrimination with DFEH*

In May 2010, Plaintiff took the Supervising Psychiatric Social Worker examination and placed in Band 3 on the eligibility list. Plaintiff's notice of results designated May 27, 2010 as the "Promulgation date" for his eligibility listing and May 27, 2011 as the "Expiration date."

In September 2010, Plaintiff applied for a vacant Supervising Psychiatric Social Worker position. There were 11 employees in Band 2 for the position, and 10 employees in Band 3. No employees placed in Band 1. The Department interviewed Plaintiff and another Psychiatric Social Worker, Ellen Wong, who had placed in Band 2. At the time, Wong had been working with chronically ill patients in need of acute care, which required a higher degree of skill than the more routine clinical work that most other Psychiatric Social Workers encountered. The Department promoted Wong to the position.

On April 8, 2011, Plaintiff filed a charge of discrimination with the DFEH, wherein he alleged the Department denied him "a promotion to Supervising Psychiatric Social Worker" from "on or about [July 1, 2004] through the present" because of his race and national origin.

On May 4, 2011, Plaintiff submitted an online application to renew his eligibility for the Supervising Psychiatric Social Worker position, and applied for a vacant Supervising Psychiatric Social Worker position the same day. However, because the "Eligibility Information" section of the Supervising Psychiatric Social Worker Promotion Opportunity Bulletin states that no person may compete for the examination more than once in a twelve month period, the Department Recruitment Unit's policy is to not process renewal applications within 12 months of a candidate's eligibility promulgation date. In accordance with that policy, the Department did not process Plaintiff's application until after May 27, 2011, when it placed him back on the eligibility list.

Although Plaintiff was not on the Supervising Psychiatric Social Worker eligibility list when he applied on May 4, 2011, the Department nevertheless interviewed him for the position on June 8, 2011. The hiring supervisors interviewed five other candidates as well, asking each of them a series of eight standardized questions. The supervisors also asked each candidate to bring a resume and other documents to the interview. Plaintiff failed to bring the requested documents, and the supervisors noted that he seemed apathetic about his work for the Department in his responses to their questions. In contrast, another candidate, Joan Hubbell, who had placed in Band 1, brought the requested documentation, and the hiring supervisors noted she seemed enthusiastic and ready for the transition into a leadership role. The Department promoted Hubbell.

In September 2011, Plaintiff submitted an online application for a Mental Health Clinical Supervisor position.[2] The duties of the position included release planning for inmates, which required a familiarity with the court system and discharge planning in addition to the usual supervisory responsibilities. One of the candidates interviewed for the position, Monica Lujan, had been a Supervising Psychiatric Social Worker with a Los Angeles County superior court program. Based on Lujan's supervisory experience and familiarity with the court system, including her background in discharge and release planning, the Department determined she was the most qualified candidate for the position.

5.     *The Complaint*

On March 28, 2012, Plaintiff filed the instant action against the Department. In his operative second amended complaint, Plaintiff asserted three causes of action for race discrimination, national origin discrimination, and retaliation in violation of FEHA. The complaint alleged the Department failed to promote Plaintiff for eight positions to which he applied between 2006 and September 2011 and that the Department allowed Plaintiff's

---

[2]     The record does not indicate whether the Department promulgated an eligibility list for the Mental Health Clinical Supervisor position.

6

eligibility for the Supervising Psychiatric Social Worker position to lapse in May 2011 because of his race and national origin. With respect to the retaliation claim, Plaintiff alleged he "was retaliated against by not receiving the June 8, 2011 promotion due to his [DFEH] charge filed on April 8, 2011."

      6.    *The Department's Motion for Summary Judgment*

The Department moved for summary judgment on the principal grounds that it had legitimate nondiscriminatory and nonretaliatory reasons for offering the subject promotions to candidates other than Plaintiff and that Plaintiff failed to timely exhaust his administrative remedy with respect to some of the alleged acts of discrimination.

Plaintiff did not dispute the material facts concerning his band ranking in relation to the employees who received the promotions, nor did he challenge those employees' qualifications or experience that the Department cited as the grounds for its promotion decisions. Instead, in opposing the Department's summary judgment motion, Plaintiff sought to demonstrate that the band-ranking process was pretextual by introducing a series of purported emails in which hiring supervisors for a handful of different positions discussed strategies to "reach" candidates in lower bands despite the apparent availability of candidates in higher bands. Plaintiff attached the emails as an exhibit to his declaration, but provided no explanation about where the emails came from or how he acquired them. The Department objected to the proffered email evidence on the grounds that the documents were not authenticated and irrelevant.[3]

---

[3]    Plaintiff contends the trial court erred by permitting the Department to file a 110-page document purporting to reply to Plaintiff's response to the Department's separate statement. While we conclude there was no prejudice, as the facts set forth in the Department's initial separate statement established its right to judgment as a matter of law, we agree with Plaintiff that the subject document was improper. Nothing in Code of Civil Procedure section 437c authorizes the moving party to file a reply to the opposing party's separate statement response, and certainly nothing authorizes the court to consider such matters in ruling on a summary judgment motion. (See, e.g., *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 [trial court's consideration of evidence submitted for the first time with moving party's reply violated due process rights of party opposing summary judgment].)

7.    *The Court's Ruling Granting Summary Judgment*

The trial court granted the Department's summary judgment motion.  The court determined that Plaintiff's failure to file a timely DFEH charge barred his discrimination claims for alleged adverse employment actions that occurred more than one year before he filed his April 8, 2011 charge of discrimination.  As for the discrimination and retaliation claims that were not time-barred, the court concluded that Plaintiff had failed to introduce admissible evidence of pretext in response to the Department's proffered nondiscriminatory and nonretaliatory reasons for the alleged adverse employment actions.  In that regard, the court sustained the Department's objection to the email evidence on the ground that the emails had not been authenticated.  The court also reasoned that the emails were insufficient to raise a triable issue of fact because they did not pertain to any of Plaintiff's promotion opportunities and none of the emails suggested the decision to reach a lower ranked candidate had been motivated by any candidate's race or national origin.

## DISCUSSION

1.    *Plaintiff Failed to Exhaust FEHA's Administrative Remedy for the Alleged Adverse Employment Actions that Occurred More than One Year Before He Filed His DFEH Charge of Discrimination*

As a threshold matter, we first address the trial court's conclusion that Plaintiff failed to exhaust his administrative remedy with respect to the alleged adverse employment actions that occurred more than one year before he filed his April 8, 2011 charge of discrimination with the DFEH.  Under FEHA, an employee must exhaust the statute's administrative remedy by filing a complaint with the DFEH and obtaining a notice of right to sue before filing a civil action in court.  (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.)  The timely filing of an administrative complaint is a jurisdictional prerequisite to bringing a civil action for damages under FEHA.  (*Ibid.*)  "As for the applicable limitation period, the FEHA provides that no complaint for any violation of its provisions may be filed with the [DFEH] 'after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred,'

8

with an exception for delayed discovery not relevant here." (*Ibid.*, quoting Gov. Code, § 12960, italics omitted.)

As noted, Plaintiff filed his charge of discrimination with the DFEH on April 8, 2011. Accordingly, under the foregoing rules, any alleged adverse employment action that occurred before April 8, 2010 cannot be a basis for his FEHA claims, unless the continuing violation doctrine applies.

Under the continuing violation doctrine "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1056 (*Yanowitz*).) "A continuing violation may be established by demonstrating 'a company wide policy or practice' or 'a series of related acts against a single individual.' " (*Morgan v. Regents of University of California* (2001) 88 Cal.App.4th 52, 64 (*Morgan*).) "The plaintiff must demonstrate that at least one act occurred within the filing period and that 'the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." [Citation.] The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern.' " (*Ibid.*)

To invoke the doctrine, the evidence must show the employer's actions "(1) [were] sufficiently similar in kind . . . ; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823 (*Richards*); *Yanowitz, supra,* 36 Cal.4th at p. 1059.) " '[P]ermanence' " in this context is properly understood to mean "that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." (*Richards,* at p. 823; *Yanowitz,* at p. 1059, fn. 19.) Thus, even if a course of unlawful conduct is established, the continuing violation doctrine ceases to apply "when the course of conduct is brought to an end, as by the employer's cessation of such conduct or by the employee's resignation, *or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain." (*Richards,* at p. 823.)

We conclude each of the Department's eight decisions not to promote Plaintiff over the subject five-and-a-half-year period constituted a discrete act that reached a state of permanence at the moment the Department awarded the promotion to another candidate. With respect to each promotion opportunity predating April 8, 2010, Plaintiff acknowledged in his response to the Department's separate statement of undisputed facts that he understood he would not be promoted once he received notice of the Department's decision to award the position to another candidate. Plaintiff also understood there were no avenues available outside the Department's mandated examination process for obtaining the promotion. Nevertheless, despite each realization that the Department's promotion decision was final, Plaintiff did not invoke his administrative remedy under FEHA until several years later. The trial court properly concluded the continuing violation doctrine did not apply and that Plaintiff's failure to file a timely charge of discrimination with the DFEH barred his claims concerning adverse employment actions that occurred outside the one-year statutory period.[4] (See, e.g., *National Railroad Passenger Corporation v. Morgan* (2002) 536 U.S. 101, 114 ["Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' "].)

---

[4]     Plaintiff contends the continuing violation in the instant case is "improper manipulation of the evaluation and selection process." To establish this violation, Plaintiff apparently means to rely on the email evidence the trial court excluded in granting the Department's motion for summary judgment. As we conclude that the trial court reasonably acted within its discretion to exclude these emails (see *post*), we also must conclude that Plaintiff failed to offer admissible evidence to establish this purported continuing violation.

10

2. *Standard of Review and the Three-stage McDonnell Douglas Test for Employment Discrimination and Retaliation Claims*

We turn now to Plaintiff's discrimination and retaliation claims that were subject to a timely DFEH charge. We begin with the applicable standard of review. "On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

A defendant is entitled to summary judgment upon a showing that the plaintiff's action has no merit. (Code Civ. Proc., § 437c, subd. (a).) The defendant meets this burden with respect to each cause of action by establishing undisputed facts that negate one or more elements of the claim or state a complete defense to the cause of action. (*Id.*, subd. (p)(2); *Romano v. Rockwell Internat., Inc., supra,* 14 Cal.4th at p. 487.) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action or defense. (*Aguilar, supra,* 25 Cal.4th at pp. 849, 853.)

In the employment discrimination context, case law has refined the foregoing burden-shifting analysis to incorporate the three-stage *McDonnell Douglas* test used to

11

try discrimination claims.[5]  (See *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097 (*Kelly*); *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1004-1005 (*Scotch*); see also *Guz, supra,* 24 Cal.4th at p. 354.)  Under the *McDonnell Douglas* test, a plaintiff employee who claims discrimination must first make a prima facie case, consisting of evidence showing (1) the plaintiff was a member of a protected class; (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held; (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance suggests a discriminatory motive.  (*Guz,* at p. 354-355.)  Once the employee satisfies this burden, there is a presumption of discrimination, and the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons.  (*Id.* at pp. 355-356.)  A " 'legitimate' " reason is one that is "*facially unrelated to prohibited bias*, and which if true, would thus preclude a finding *of discrimination*."  (*Id.* at p. 358.)  If the employer meets this burden, the presumption disappears, and the employee, who retains the overall burden of persuasion, then must show the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination.  (*Id.* at p. 356.)

---

[5]     "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.  [Citation.]  In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment."  (*Guz, supra,* 24 Cal.4th at p. 354, citing *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.)  "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained."  (*Guz,* at p. 354.)

As the court explained in *Kelly*, "[a] defendant employer's motion for summary judgment slightly modifies the order of these showings." (*Kelly, supra,* 135 Cal.App.4th at p. 1097.) If the employer's summary judgment motion "relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination." (*Id.* at pp. 1097-1098, citing *Aguilar, supra,* 25 Cal.4th at pp. 850-851; *Guz, supra,* 24 Cal.4th at p. 357.) "To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred." (*Kelly,* at p. 1098, citing *Aguilar,* at pp. 850-851; *Guz,* at p. 357.) In determining whether these burdens were met, the court must view the evidence in the light most favorable to the plaintiff, as the nonmoving party, drawing all reasonable inferences in the plaintiff's favor. (*Aguilar,* at p. 856; *Kelly,* at p. 1098.)

The three-stage *McDonnell Douglas* test applies to FEHA retaliation claims as well. (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1108-1109 (*Loggins*).) Thus, even without challenging the plaintiff's prima facie case, an employer moving for summary judgment can satisfy its burden by producing evidence showing a legitimate nonretaliatory reason for the alleged adverse employment action. (*Ibid.*) Once this showing is made, "the burden shifts . . . to the employee to provide 'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual." (*Ibid.*)

3. *The Undisputed Evidence Establishes Plaintiff Was Denied a Promotion Because There Were Other More Qualified Candidates*

Like the trial court, we conclude the Department's evidence established a plausible nondiscriminatory and nonretaliatory reason for the decision not to promote Plaintiff. With respect to the three promotion opportunities at issue, the Department identified the competing candidates' relative band rankings and qualifications as the reason they were chosen for promotions over Plaintiff. As for the September 2010 and May 2011

13

Supervising Psychiatric Social Worker promotions, the Department's evidence showed that the selected candidates placed in Band 1 and Band 2, while Plaintiff's examination score placed him in Band 3. The evidence also showed that Wong, who received the September 2010 promotion, had been working in a more demanding program with chronically ill patients, which required her to perform at a higher level than other candidates like Plaintiff. As for Hubbell, who placed in Band 1 and received the May 2011 promotion, the evidence showed she followed the hiring supervisors' directions to bring certain paperwork to her interview and her answers to the supervisors' standard questions demonstrated, in the supervisors' view, more enthusiasm for taking on a leadership role than did Plaintiff's responses. Finally, with respect to the September 2011 Mental Health Clinical Supervisor position, the Department's evidence showed that Lujan was selected because she, unlike Plaintiff, already had supervisory experience and that her experience with inmate discharge and release planning satisfied an essential requirement for the position. This evidence, which Plaintiff *did not dispute* with admissible evidence in opposing summary judgment, would permit a trier of fact to find, more likely than not, that these candidates were chosen for promotions over Plaintiff because of their superior qualifications—not because of Plaintiff's race or national origin, or any retaliatory animus harbored by the Department. (See *Guz, supra,* 24 Cal.4th at p. 357; *Scotch, supra,* 173 Cal.App.4th at pp. 1004-1006; *Loggins, supra,* 151 Cal.App.4th at pp. 1108-1109.)

Once the Department established nondiscriminatory and nonretaliatory reasons for its decisions, the burden shifted to Plaintiff to present evidence that the Department's stated reasons were pretextual and that the Department acted with discriminatory or retaliatory animus. To meet this burden, Plaintiff relied exclusively upon a collection of emails that purported to show hiring managers manipulated the promotion process to "reach" favored candidates in lower bands despite the apparent availability of candidates in higher bands. The trial court excluded the emails because Plaintiff failed to authenticate them, and the court concluded Plaintiff had presented no other evidence that would permit the trier of fact to find Plaintiff was not promoted because of race, national

14

origin or retaliatory animus.  We turn to the trial court's decision to exclude the emails now.

>   4.   *The Trial Court Acted Within Its Discretion to Exclude the Unauthenticated Emails from Evidence*

We review the trial court's evidentiary rulings on summary judgment for abuse of discretion.  (*Park v. First American Title Co*. (2011) 201 Cal.App.4th 1418, 1427; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 ["Although it is often said that an appellate court reviews a summary judgment motion 'de novo,' the weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard."].)  In applying this standard, we will set aside the trial court's decision only if the appellant can show, on the record presented, "no judge could reasonably have made the order that he did."  (*Newbauer v. Newbauer* (1949) 95 Cal.App.2d 36, 40; *DiCola v. White Brothers Performance Products, Inc*. (2008) 158 Cal.App.4th 666, 679 (*DiCola*).)  Thus, the appellant's showing will be "insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion."  (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118; *DiCola,* at pp. 679-680.)

While it may be that "in some legal systems it is assumed that documents are what they purport to be, unless shown to be otherwise," "[w]ith us it is the other way around."  (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 525 (*Continental Baking*).)  "Generally speaking, documents must be authenticated in some fashion before they are admissible in evidence."  (*Ibid.*; Evid. Code, § 1401, subd. (a) ["Authentication of a writing is required before it may be received in evidence."].)  To make the requisite preliminary showing of authenticity, a document's proponent must introduce sufficient evidence to sustain a finding that the document is what the proponent claims it to be.  (Evid. Code, § 1400, subd. (a).)

*Continental Baking* not only supports the trial court's exclusion of the proffered emails, but our Supreme Court's holding in that case would have required reversal had the trial court ruled otherwise. *Continental Baking* involved a dispute between the owners of two land parcels in which the trial court permitted one owner, Continental, to introduce three documents to establish the existence of an easement over the property of the other owner, Katz. (See *Continental Baking, supra,* 68 Cal.2d at p. 520, 523-524.) Katz objected to the documents' admission on the ground that Continental failed to lay a sufficient foundation for authentication. (*Id.* at p. 524.) Continental's attorney responded that, " 'insofar as the authentication is concerned, I can have a witness testify,' " and he represented that he " 'got [the documents] from the general counsel of [Continental], so they [were] obviously business records under the liberal interpretation.' " (*Id.* at pp. 524-525.) The trial court admitted the documents into evidence; the Supreme Court reversed.

After citing the rule requiring authentication before documents are admitted into evidence, the Supreme Court commented on the trial court's error: "In the case at bar the court simply took counsel's word for it that he could have a witness lay the necessary foundation and that he, the attorney, had obtained the documents from the general counsel of Continental so that they were 'business records under the liberal interpretation.' [¶] While we have just as much faith in counsel's sincerity as the trial court evidently had, such faith does not take the place of testimony or judicial notice. [¶] The reception of the documents in evidence was therefore erroneous." (*Continental Baking, supra,* 68 Cal.2d at p. 526.)

As in *Continental Baking*, Plaintiff in the instant case failed to offer any foundational evidence to establish the authenticity of the purported emails attached to his declaration. Plaintiff's declaration says nothing about where the emails came from or how Plaintiff acquired them. Nor does Plaintiff offer any information to establish his personal knowledge about the source of the emails, their authors, their genuineness, or whether the events discussed in the emails actually occurred. Without evidence sufficient to show the emails were what Plaintiff claimed them to be, it would have been error for

16

the trial court to admit the emails in evidence. (*Continental Baking, supra,* 68 Cal.2d at p. 526.) The court properly excluded them as such.

On appeal, Plaintiff does not dispute that he failed to properly authenticate the emails when he introduced them in the trial court. He nevertheless argues the trial court should not have granted summary judgment because it was reasonable to infer that Plaintiff could have "cured" the deficiency with a brief continuance. We disagree.

Code of Civil Procedure section 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, *for reasons stated*, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just." (Italics added.) As the italicized clause makes plain, to invoke subdivision (h) the party opposing summary judgment must, at a minimum, request a continuance and offer some justification as to why the relevant evidence could not have been produced. The summary judgment hearing transcript demonstrates Plaintiff did neither. We cannot say the trial court erred by failing to grant relief that Plaintiff never requested. (See, e.g., *Cryoport Systems v. CNA Ins. Cos.* (2007) 149 Cal.App.4th 627, 633; *Davis v. Nadrich* (2009) 174 Cal.App.4th 1, 8.)

Having ruled the emails could not be admitted as evidence to demonstrate pretext, the trial court concluded Plaintiff had offered no evidence to show the Department's proffered reasons for its promotion decisions were pretextual or that the reason he was not promoted was because of race, national origin, or retaliatory animus. We reach the same conclusion on this record.[6]

---

[6]     Insofar as Plaintiff maintains the May 2011 lapse in his eligibility for the Supervising Psychiatric Social Worker position constituted an adverse employment action, we agree with the trial court that "Plaintiff present[ed] no evidence that the delay [in the Department processing his application to renew eligibility] was due to Plaintiff's race or national origin."

## DISPOSITION

The judgment is affirmed.  The County of Los Angeles Department of Mental Health is entitled to its costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



                                        KITCHING, J.

We concur:



        EDMON, P. J.



        EGERTON, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18