Filed 5/14/20 Modified and Certified for Partial Pub. 6/5/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE ex rel. GEORGE GASCON, as District Attorney, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> HOMEADVISOR, INC., et al., <br><br> Defendants and Appellants. | A154960 <br><br> (San Francisco County Super. Ct. No. CGC-18-565008) |

The appellants in this case are HomeAdvisor, Inc., and its parent company, ANGI Homeservices, Inc. (collectively, HomeAdvisor). HomeAdvisor appeals an order granting a preliminary injunction. The order enjoined HomeAdvisor from broadcasting certain advertisements, but, with the exception of advertisements HomeAdvisor discontinued, it permitted HomeAdvisor to continue broadcasting them for specified lengths of time if accompanied by a disclaimer. HomeAdvisor contends the order is vague, indefinite, overbroad, and unconstitutional. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In March 2018, the People of the State of California, acting by and through the District Attorney for the City and County of San Francisco (the People) filed a complaint against HomeAdvisor alleging it engaged in conduct in violation of California's False Advertising Law (FAL), Business and

1

Professions Code, section 17500 et seq., and the Unfair Competition Law (UCL), *id.*, section 17200 et seq.  The complaint alleged many of HomeAdvisor's advertisements "are false and misleading because they are likely to deceive consumers into believing that all service professionals hired through HomeAdvisor who come into their homes have passed criminal background checks.  That is not the case.  The only person who undergoes a background check is the owner/principal of an independently-owned business."

The People applied for a temporary restraining order (TRO) and an order to show cause (OSC) why a preliminary injunction should not issue.  In support of the application, the People submitted fifteen television advertisements that refer to background checks.  The People also submitted thirteen internet advertisements that, for the most part, are modified versions of the television advertisements, but which do not refer to background checks.  HomeAdvisor opposed the application.  The trial court did not grant the TRO, but issued the OSC.

I.      *HomeAdvisor's Advertisements*

The evidence supporting the People's request for injunctive relief included the following television advertisements:

In "Carl," a middle-aged man explains he can't always be there when his mother needs help:  "So when her roof started to leak I went to HomeAdvisor and found the right pro to help.  They are background checked."

In "Happy Homeowners," a woman standing with two young children states:  "As a single mom, I love that HomeAdvisor does background checks on pros."  The words "background checks" appear on the screen, and then the advertisement cuts to a man who says, "Gives me peace of mind."

2

In "Busy Mom," a mother talks about the difficulty of finding time to do home projects. She states: "But, thankfully, with HomeAdvisor, it's easy to find a local pro that I can trust—because they've been background-checked."

In "TV Ad Featuring Jason Cameron," a television show host tells the viewers, "With HomeAdvisor you know that you'll get a reliable pro because they must pass criminal and financial background checks before they're listed." Then a woman says, "As a single mom I have to be careful with who I invite to my home."

In "HomeAdvisor Testimonials," another television show host, Amy Matthews, states: "HomeAdvisor pros pass criminal and financial background checks before they're listed." In "Pros You Can Trust," the same host states HomeAdvisor "instantly connects you with top-rated pros who have passed criminal and financial background checks." In "HomeAdvisor Testimonials," a woman standing in her bathroom says, "I love the fact that they have been background-checked—that's a great feeling." In the same advertisement, another woman standing in her kitchen says, "You can feel safe with them coming into your home."

A number of the advertisements feature neighbors or acquaintances discussing the benefits of the service. In "Neighbors," two women discuss how HomeAdvisor connected one of them "with background-checked pros who can help." In "HomeAdvisor Millennial," a man states: "HomeAdvisor matches you with background-checked pros." In "Bar-B-Que," "Jogger," and "Mailboxes," the advertisements state the viewer can "book a background-checked home pro for free."

In "Grateful Dad," a father states HomeAdvisor has "verified reviews of the pros, and they do background checks so you know you can trust them with your home." In "HomeAdvisor App–Free to Use," a homeowner says,

3

"And because pros on HomeAdvisor are background-checked, I feel confident hiring them right when I need them."

In addition to these fifteen television advertisements, the People submitted a declaration averring that HomeAdvisor's radio advertisements discussed matching homeowners with prescreened and background-checked professionals. HomeAdvisor's mobile application stated, "Nationwide, we have a network of hundreds of thousands of background-checked pros specializing in more than 500 home renovation projects."

II.     *HomeAdvisor's Background-Check Process*

Despite these representations, information available on HomeAdvisor's website explained that HomeAdvisor performs a background check on the "owner/principal" of the businesses that are members of its network. Subparagraph (f) of paragraph 10 of HomeAdvisor's "Terms and Conditions" stated that HomeAdvisor performs no background check when the businesses are "employees, franchisees, dealers, or independent contractors . . . of larger national or corporate accounts."

In opposing the People's request for injunctive relief, HomeAdvisor provided additional information. According to a senior vice president, "[w]ith only minor exceptions," HomeAdvisor background checks the owner or principal of "every service professional business seeking to become a member of the HomeAdvisor network." HomeAdvisor checks the "owner/principal's criminal record, sex offender status, civil judgments, and bankruptcies, and verification of the owner/principal's identity by SSN." HomeAdvisor confirms these businesses "carry any required state-level trade licenses and, as applicable, that the entities are registered in the state where they are doing business." HomeAdvisor discloses this process on the " 'Screening' " page of

4

its website, on its "Terms and Conditions" webpage, and on its "Help and FAQ page."

"HomeAdvisor also screens: (1) the license holder if there is a state-level license, and (2) anyone whom the [business] adds to the account for administrative purposes (*e.g.*, putting the account on hold)." However, if a "franchisee or a dealer is a corporate account," then they are not subject to HomeAdvisor's background check policy.

According to HomeAdvisor, 75 percent of the businesses listed on its network have "four or fewer total employees." HomeAdvisor admits that extending background checks to "all employees" of the businesses that are part of its network "would impose substantial financial difficulties on HomeAdvisor and would be impossible for HomeAdvisor to administer on an operational level. Given that HomeAdvisor could not confirm the accuracy of employee lists coupled with high turnover and seasonal hiring in the industry, it would be effectively impossible for HomeAdvisor to keep track of compliance."

III.    *The Hearings on the Motion for a Preliminary Injunction*

At the first hearing, on April 12, 2018, the court found HomeAdvisor's advertisements were misleading, but it also found "the statements on the website cure that misleading nature except that they're not in the ads themselves and they're not conspicuous." The court continued: "So if we take the statements from the website, we make them conspicuous, I think everybody's objective possibly could be realized here: the objective of the People of not having misleading ads and the objective of HomeAdvisor also not to have misleading ads and to be able to retain a large part of the advertising work that they already have done." The court proposed adding a disclaimer to the advertisements.

The court found the advertisements "have a misleading nature in suggesting to the viewer or the hearer that every person who comes into the home through the HomeAdvisor protocol has been screen-checked or background-checked." But the court was concerned to correct the problem in a way "that causes less financial harm to HomeAdvisor." The court suggested the parties work on a stipulated injunction.

At the second hearing on April 18, 2018, the parties discussed their attempts to come to an agreement regarding disclaimer language and its placement. The court indicated the visual disclaimers had to be prominent and the court and the parties discussed whether oral disclaimers were necessary.

At the third hearing, on April 25, 2018, the People proposed the disclaimer should state: " 'HomeAdvisor background checks business owners but not employees.' " HomeAdvisor responded that some employees are background-checked; namely, employees "allowed access to manage the HomeAdvisor relationship." But HomeAdvisor acknowledged it was a "limited" number of employees.

At the fourth hearing, on May 8, 2018, the People and HomeAdvisor submitted evidence of proposed modified advertisements with disclaimers. For the disclaimer, HomeAdvisor proposed: " 'HomeAdvisor background checks business owners and limited employees,' " or " 'HomeAdvisor background checks business owners and account manager employees.' " The court adopted the People's proposal, which stated: "HomeAdvisor background checks business owners but not employees."

With regard to disputes pertaining to the visual and audio disclaimers, the court continued the hearing so that the parties could prepare a list of issues in dispute and the materials the court had to view to evaluate them.

6

The parties discussed when the current advertisements would cease being broadcast, and the length of time during which "HomeAdvisor would be allowed to show the corrected ads." The court deferred ruling on these issues in dispute because "the most thoughtful adjudication" required the court "to look at the full package."

At the final hearing on May 10, 2018, the court indicated it had reviewed all items on the parties' joint agenda and their exhibits. The parties debated whether certain advertisements needed an audio disclaimer as well as a visual one. The parties discussed HomeAdvisor's exhibits 17 to 25, which were new advertisements that HomeAdvisor sought to broadcast for an additional six months. The parties argued regarding visual aspects of the disclaimer and its length, and the court received input from HomeAdvisor's chief marketing officer. The court ruled in favor of HomeAdvisor regarding a proposed sunset date for the advertisements with disclaimers and an implementation date for the preliminary injunction. The court ruled in favor of the People regarding the language and visuals of the disclaimer.

IV. *The Order Granting a Preliminary Injunction*

After the hearings, the court entered a preliminary injunction against HomeAdvisor. Based on the evidence presented by the parties, the court found it was "reasonably probable that the People will prevail" on their FAL and UCL claims "that members of the public are likely to be deceived by the television, radio, and Apple App Store advertisements which are the subject of the People's motion. Thus, a rebuttable presumption arises that the potential harm to the public from [HomeAdvisor's] activities outweighs the potential harm . . . from issuance of a preliminary injunction. . . . The Court further finds that the Defendants have not shown that they would suffer

7

grave or irreparable harm from the issuance of the preliminary injunction . . . ."

"During the pendency of this action," the court enjoined HomeAdvisor from "[b]roadcasting into California" television or radio advertisements "that state or imply that all service personnel who come to consumers' homes as a result of consumers' having used the HomeAdvisor service have been background-checked." The court listed 24 examples of enjoined advertisements, which included the 15 advertisements presented in the application for a TRO, and nine additional advertisements presented by HomeAdvisor during the final hearing. The court also enjoined HomeAdvisor from "[i]ncluding in the description of the HomeAdvisor App in the Apple App Store and the Google Play store words that state or imply that all service personnel who come to consumers' homes as a result of consumers' having used the HomeAdvisor service have been background-checked."

However, the order contained safe harbor provisions for advertisements that do not state or imply that all service personnel have been background-checked, and for advertisements with disclaimers. The court identified 14 permissible advertisements, most of which are modified versions of the enjoined advertisements. Most importantly, with the exception of advertisements that HomeAdvisor discontinued,[1] the court permitted HomeAdvisor to continue broadcasting eight of the enjoined advertisements for a period of over four months, and nine of the enjoined advertisements for a period of over seven months, even though they mention background checks, "as long as a clear and conspicuous visual disclaimer appears in each

---

[1] Based on exhibit A to HomeAdvisor's proposed order granting the preliminary injunction, the discontinued advertisements include "Carl," "TV Ad Featuring Jason Cameron," "HomeAdvisor Testimonials," "Pros You Can Trust," "Neighbors," and "HomeAdvisor Millennial."

8

television and Internet advertisement that states: '**HomeAdvisor Background-Checks Business Owners But Not Employees**.' "

The preliminary injunction order was dated May 23, 2018, and it became effective on June 4, 2018. HomeAdvisor appeals the order. (Code Civ. Proc., § 904.1, subd. (a)(6).)

## DISCUSSION

On appeal, HomeAdvisor makes three arguments. First, it argues the preliminary injunction is impermissibly vague, indefinite and overbroad. Second, it argues the order violates the California Constitution and the First Amendment of the United States Constitution. Third, HomeAdvisor contends the injunction's safe harbor disclaimer is misleading and constitutes unconstitutional compelled speech. We address each argument in turn.

I.    *The Preliminary Injunction Is Not Impermissibly Vague, Indefinite, or Overbroad*

"An injunction must be sufficiently definite to provide a standard of conduct for those whose activities are to be proscribed, as well as a standard for the court to use in ascertaining an alleged violation of the injunction." (*People ex rel. Dept. of Transportation v. Maldonado* (2001) 86 Cal.App.4th 1225, 1234.) "An injunction which forbids an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application exceeds the power of the court." (*Pitchess v. Superior Court* (1969) 2 Cal.App.3d 644, 651.) However, "[t]he injunction need not etch forbidden actions with microscopic precision, but may instead draw entire categories of proscribed conduct. Thus, an injunction may have wide scope, yet if it is reasonably possible to determine whether a particular act is included within its grasp, the injunction is valid." (*People v. Custom Craft Carpets, Inc.* (1984) 159 Cal.App.3d 676, 681.)

9

HomeAdvisor complains the trial court failed "to engage in any . . . individualized examination of the advertisements or otherwise to provide specific guidance on what it means to 'imply' that 'all' service personnel have been background-checked."  HomeAdvisor argues the court failed to distinguish "between advertisements that 'state or imply that all service personnel' are background-checked and those that merely mention the phrase 'background checks.' "  HomeAdvisor claims the order "contains no definitions or guiding principles for HomeAdvisor to use to discern, much less navigate, the boundary between mere mentions of the benefits of its background-check program and prohibited implications about its scope."

We disagree.  Contrary to HomeAdvisor's claims, the court did "get into the weeds" by holding five hearings on the People's request for injunctive relief, by reviewing and comparing a plethora of advertisements and modified versions, including versions prepared by HomeAdvisor, and by ruling on a host of issues in dispute relating to the visual and audio aspects of disclaimers.

The end result was a nuanced order that is not overbroad, and it does not prohibit all mention of background checks.  Instead, enjoined advertisements and descriptions state HomeAdvisor background-checks "pros" or that HomeAdvisor matches consumers with "background-checked pros."  And the order did not simply ban these advertisements.  With the exception of advertisements that HomeAdvisor discontinued, the order's safe harbor provisions permitted HomeAdvisor to continue broadcasting advertisements that refer to "background-checked pros" or its variants for specified periods of time if accompanied by a disclaimer.

Nor is the order vague or indefinite.  On the contrary, it is sufficiently definite to provide a standard for HomeAdvisor to use in developing new

10

advertisements, and for the court to ascertain any alleged violations of the injunction.  (*People ex rel. Dept. of Transportation v. Maldonado, supra*, 86 Cal.App.4th at p. 1234.)  What the order enjoined is not the mere mention of background checks, but rather advertisements that refer to "background-checked pros," or its variants, such as background-checked or prescreened " 'home-improvement professionals' " or " 'home-improvement pros,' " because these terms imply that the person who comes to the consumers' home has been background-checked.  (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 534 ["the language of the injunction must be interpreted in light of the record which discloses the kind of conduct that was sought to be enjoined"].)

In arguing otherwise, HomeAdvisor relies primarily on *ReadyLink Healthcare v. Cotton* (2005) 126 Cal.App.4th 1006, 1026.  But there the court rejected the appellant's contention that the preliminary injunction was vague and ambiguous, "with the exception of certain language" that the court struck from the order.  (*Id.* at pp. 1011, 1026.)  Here, HomeAdvisor does not identify specific language that it contends should be stricken.

In *People v. Columbia Research Corp.* (1977) 71 Cal.App.3d 607, the court found an order prohibiting the defendant from " 'describing any goods or services . . . as "first class" unless such goods or services are equivalent to the highest quality of goods or services offered within the geographic area within which they are to be provided' " was not so vague and ambiguous as to be void.  (*Id.* at p. 613.)  Similarly here, by providing a large number of specific examples of permissible and impermissible advertising, the preliminary injunction order is sufficiently definite for HomeAdvisor to determine what it "may and may not do" pending a trial on the merits of the People's claims.  (*Continental Baking Co. v. Katz, supra*, 68 Cal.2d at p. 534.)

11

II.    *The Preliminary Injunction Order Is Not Unconstitutional*

HomeAdvisor argues the preliminary injunction order "violates HomeAdvisor's rights under both the California and United States Constitutions."  We disagree.

A.    *No Waiver of the Constitutional Argument*

The People contend HomeAdvisor waived its First Amendment challenge by making the argument for the first time on appeal.  Whether we should address constitutional arguments "rests within the court's discretion." (*Lopez v. McMahon* (1988) 205 Cal.App.3d 1510, 1520–1521 [addressing constitutional argument made for the first time on appeal].)  California courts "have several times examined constitutional issues raised for the first time on appeal."  (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)

In arguing HomeAdvisor waived the issue, the People rely on *California Assn. of Dispensing Opticians v. Pearle Vision Center, Inc.* (1983) 143 Cal.App.3d 419, in which the court stated that "constitutional questions should be raised at the trial court level or considered waived."  (*Id.* at p. 430.) But, in the same opinion, the court addressed—and rejected—the defendant's First Amendment challenge to a preliminary injunction that, in part, prohibited defendant's advertisements.  (*Id.* at pp. 432–433.)  We exercise our discretion to consider HomeAdvisor's constitutional challenge.

B.    *The Constitutionality of Restrictions on Commercial Speech*

Under the First Amendment, commercial speech is entitled to less protection from governmental regulation than other forms of expression. (*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n* (1980) 447 U.S. 557, 562–563 (*Central Hudson*); *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 952 (*Kasky*).)  When evaluating restrictions on commercial speech, the first inquiry is "whether the expression is protected by the First Amendment.  For

12

commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." (*Central Hudson*, *supra*, 447 U.S. at p. 566.)

"With regard to misleading commercial speech, the United States Supreme Court has drawn a distinction between, on the one hand, speech that is actually or inherently misleading, and, on the other hand, speech that is only potentially misleading. Actually or inherently misleading commercial speech is treated the same as false commercial speech, which the state may prohibit entirely. [Citations.] By comparison, '[s]tates may not completely ban potentially misleading speech if narrower limitations can ensure that the information is presented in a nonmisleading manner.'" (*Kasky*, *supra*, 27 Cal.4th at p. 954.)

"[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it." (*Central Hudson, supra,* 447 U.S. at p. 563.) If "advertising is inherently likely to deceive or where the record indicates that a particular form or method of advertising has in fact been deceptive," the speech is unprotected. (*In re R.M.J.* (1982) 455 U.S. 191, 202.) Once it is determined that commercial speech is inherently likely to deceive, our inquiry ends because there is no First Amendment interest at stake. (*Central Hudson*, at p. 566; *In re R.M.J.*, at p. 203.)

13

### C. *The Prohibited Advertisements Are Inherently Likely to Mislead Reasonable Consumers*

On appeal, HomeAdvisor admits that many of its advertisements refer to " 'background-checked pros,' " or " 'prescreened' pros," or refer to "pros" that have been background-checked. According to HomeAdvisor, these advertisements communicate "entirely truthful information about HomeAdvisor's business" because HomeAdvisor "maintains a network of approximately 200,000 service professional businesses that have been background-checked."

We are not persuaded. The enjoined advertisements and descriptions are inherently likely to deceive because they exploit the ambiguity of the term "pro." According to HomeAdvisor, it offers a service that connects "consumers with providers of home services such as plumbers, painters, [and] contractors," but, when HomeAdvisor uses the term "pros," it means "service professional businesses," not the plumbers, painters, or contractors working for these businesses.

It is reasonable to understand "pro" as an abbreviation for "professional," and a "professional" is commonly understood to be a person, not a business. (Oxford English Dict. [defining a professional as a "person who engages in a specified activity, especially a sport, as a paid occupation," or as a "person engaged in a profession, esp. one requiring special skill or training"] <https//oed.com/view/Entry/152053?redirectedFrom=professional #eid> [as of May 13, 2020].) A reasonable consumer would likely understand "pros" to mean the persons or professionals coming to their home, not the businesses for whom they work. Therefore, the advertisements that refer to "background-checked pros," or its variants, are inherently likely to deceive. Accordingly, they are not entitled to First Amendment protection. (*Central Hudson*, *supra*, 447 U.S. at p. 563; *Kasky*, *supra*, 27 Cal.4th at p. 952.)

14

For the first time in its reply brief, HomeAdvisor argues that even if "the phrase 'background-checked pros' is misleading because it does not clearly refer to service professional businesses, the Order still must be vacated because the phrase constitutes non-actionable puffery." We decline to consider the argument. (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 693 ["Basic notions of fairness dictate that we decline to entertain arguments that a party has chosen to withhold until the filing of its reply brief, because this deprives the respondent of the opportunity to address them on appeal."].)

Other aspects of the enjoined advertisements make it even more likely that reasonable consumers would be deceived or misled by them. Many of the television advertisements display a graphic of search results, which include images of individuals above the names of businesses, but the profile pictures are of individuals, not businesses.[2] "Pros You Can Trust" refers to pros "who" have passed background checks, not pros "that" have done so. Furthermore, a number of the advertisements, including "HomeAdvisor Testimonials," imply that consumers can feel more comfortable regarding the persons who come to their homes because HomeAdvisor background-checks "pros."

HomeAdvisor states that "Pros You Can Trust," is one of a number of advertisements that HomeAdvisor voluntarily discontinued before the order was issued, and that it was "improper to base injunctive relief" on discontinued advertisements. But the order expressly took into account that HomeAdvisor discontinued some of the advertisements. Except for

---

[2] Remarkably, HomeAdvisor argues this graphic would indicate to a reasonable consumer that the term "background-checked pros" refers to business entities, even though the profile pictures are of individuals.

15

advertisements HomeAdvisor discontinued—as identified by HomeAdvisor in exhibit A to its proposed order granting the injunction—the order's safe harbor provisions permitted HomeAdvisor to continue broadcasting existing advertisements for periods ranging from approximately four to seven months if accompanied by a disclaimer. The court included the safe harbor provisions to allow HomeAdvisor to continue broadcasting advertisements during the time needed to produce new advertisements, and to lessen the financial harm to HomeAdvisor.

D.     *To Enter a Preliminary Injunction, the Court Was Not Required to Review Evidence of Actual Consumer Harm*

In arguing the order is unconstitutional, HomeAdvisor contends there was no evidence its advertisements caused actual harm. But "[w]hether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law which we must determine after independently reviewing the record." (*People v. Morse* (1993) 21 Cal.App.4th 259, 265.) Having independently reviewed the record, we conclude HomeAdvisor's references to "background-checked pros" or its variants are inherently likely to deceive reasonable consumers. Therefore the advertisements that include these statements are not entitled to protection under the First Amendment or California's Constitution.[3] (*Central Hudson, supra,* 447 U.S. at p. 563; *Kasky, supra,* 27 Cal.4th at p. 959.)

By faulting the court for entering a preliminary injunction order without evidence of actual consumer harm, HomeAdvisor ignores the posture of this case. " ' " 'The granting or denial of a preliminary injunction does not

[3] Although California's free speech provision may be broader than the First Amendment, HomeAdvisor makes no specific argument to this effect, and "we see no reason why . . . misleading advertisements would be protected commercial speech under the California Constitution." (*In re Morse* (1995) 11 Cal.4th 184, 200, fn. 4.)

16

amount to an adjudication of the ultimate rights in controversy.' " ' " (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1280.) The court's interlocutory decision on the likelihood that the plaintiff will prevail at trial reflects nothing more than the court's evaluation of the controversy based on the record before it at the time of its ruling. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109.)

In addition, this case concerns a preliminary injunction order sought by a governmental entity alleging HomeAdvisor violated statutes—the FAL and the UCL—that specifically provide for injunctive relief. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 72.) " 'Where a governmental entity seeking to enjoin the alleged violation of an ordinance which specifically provides for injunctive relief establishes that it is reasonably probable it will prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant. If the defendant shows that it would suffer grave or irreparable harm from the issuance of the preliminary injunction, the court must then examine the relative actual harms to the parties.' [Citations.]" (*People ex rel. Feuer v. FXS Management, Inc.* (2016) 2 Cal.App.5th 1154, 1158–1159.)

Here, the court found HomeAdvisor failed to rebut the presumption "that the potential harm to the public . . . outweighs the potential harm to [HomeAdvisor] from issuance of a preliminary injunction." During the fifth hearing, HomeAdvisor acknowledged that "the harm that is at issue here . . . is one that is based on a presumption, not an actual presentation of harm." The court was not required to consider evidence of actual consumer harm.[4]

---

[4] Because the advertisements are inherently likely to deceive, many of the cases relied upon by HomeAdvisor are inapposite. (*U.D. Registry, Inc. v. State of California* (2006) 144 Cal.App.4th 405, 412, 423 [undisputed that

E.    *The Order Is Not an Invalid Prior Restraint*

HomeAdvisor contends the preliminary injunction order is an unconstitutional prior restraint on expression.  We disagree.

" 'The term prior restraint is used "to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur."  [Citation.]  Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.'  [Citation.]  Nonetheless, the United States Supreme Court 'has never held that all injunctions are impermissible.'  [Citation.]  'The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment.' "  (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 886.)

" 'Once specific expressional acts are properly determined to be unprotected by the [F]irst [A]mendment, there can be no objection to their subsequent suppression . . . .' "  (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1156.)  Thus, "an injunction issued following a trial that determined that the defendant defamed the plaintiff that does no more than prohibit the defendant from repeating the defamation, is not a prior restraint and does not offend the First Amendment."  (*Id.* at p. 1148.)  In *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, the

plaintiff's consumer credit reports were not misleading]; *Gerawan Farming, Inc. v. Kawamura* (2004) 33 Cal.4th 1, 22 [the right plaintiff "seeks to exercise has nothing to do with . . . misleading speech"]; *Baba v. Board of Supervisors* (2004) 124 Cal.App.4th 504, 509, 517 [affirming finding that rent ordinance provisions were unconstitutional, and disagreeing with appellant that provisions regulated only unlawful or misleading speech]; *Larson v. City & County of San Francisco* (2011) 192 Cal.App.4th 1263, 1292 ["the speech in question is neither misleading nor unlawful"].)

18

court determined a restraining order was not an invalid prior restraint because it prohibited conduct determined after a hearing to constitute abuse under the Domestic Violence Prevention Act. (*Id.* at p. 1419.)

Here, after holding five hearings, the court found the People were reasonably likely to prevail on their claims that members of the public are likely to be deceived by advertisements that refer to "background-checked pros" or its variants. "The government may ban forms of communication more likely to deceive the public than to inform it." (*Central Hudson, supra,* 447 U.S. at p. 563.) The First Amendment does not protect advertising that is "likely to deceive." (*In re R.M.J., supra,* 455 U.S. at p. 202.) Therefore, the preliminary injunction order is not an invalid prior restraint because it does not restrain "the type of 'speech' afforded constitutional protection." (*In re Marriage of Evilsizor & Sweeney, supra,* 237 Cal.App.4th at p. 1427.)

We recognize that "a court must tread lightly and carefully when issuing an order that prohibits speech." (*Balboa Island Village Inn, Inc. v. Lemen, supra,* 40 Cal.4th at p. 1159.) " 'An order issued in the area of First Amendment rights must be couched in the narrowest terms . . . . [It] must be tailored as precisely as possible to the exact needs of the case.' [Citations.]" (*Id.*) An injunction may not be "broader than necessary to provide relief to plaintiff while minimizing the restriction of expression." (*Id.* at p. 1160.)

Here, these requirements are satisfied. As explained *ante*, the order was not overbroad because, with the exception of advertisements HomeAdvisor discontinued, its safe harbor provisions allowed HomeAdvisor to continue broadcasting advertisements that refer to "background-checked pros" or its variants for specified periods of time if accompanied by a disclaimer. And the order expressly permitted HomeAdvisor to broadcast advertisements that do not state that HomeAdvisor background-checks

19

"pros." This narrowly-tailored injunction is not an unconstitutional prior restraint.

Finally, we note the language prohibiting HomeAdvisor from broadcasting advertisements "that state or imply that all service personnel who come to consumers' homes as a result of consumers' having used the HomeAdvisor service have been background-checked" was included in HomeAdvisor's proposed order granting a preliminary injunction. Thus, even if this language could be construed as an invalid prior restraint on expression, we presume HomeAdvisor invited the error. (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000 [" 'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.' "].)

III.     *The Safe Harbor Disclaimer*

HomeAdvisor contends the safe harbor disclaimer is misleading and constitutes unconstitutional compelled speech. We decline to address these arguments because they are moot.

"[A]ppellate courts as a rule will not render opinions on moot questions." (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178.) "The policy behind this rule is that courts decide justiciable controversies and will normally not render advisory opinions." (*Id.* at p. 1179.) "If relief granted by the trial court is temporal, and if the relief granted expires before an appeal can be heard, then an appeal by the adverse party is moot." (*Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 144.)

Here, HomeAdvisor's ability to broadcast existing advertisements with disclaimers expired on January 12, 2019, which was over a month before

HomeAdvisor filed its opening brief in this appeal.  Therefore its objections to the disclaimer are moot.  HomeAdvisor does not offer any rebuttal in reply.  Therefore HomeAdvisor effectively concedes that its arguments regarding the safe harbor disclaimer are moot, and we will not address them.  (*Campbell v. Ingram* (1918) 37 Cal.App. 728, 732 ["Since appellant has not deigned to reply to the argument of respondent, we have a right to assume that the former deems the argument of the latter unanswerable . . . ."].)

DISPOSITION

We affirm.  The People are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____

Jones, P. J.

WE CONCUR:


_____

Needham, J.


_____

Burns, J.


A154960

Filed 6/5/20

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE ex rel. GEORGE GASCON, as District Attorney, etc., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> HOMEADVISOR, INC., et al., <br><br>     Defendants and Appellants. | A154960 <br><br> (San Francisco County <br> Super. Ct. No. CGC-18-565008) |

**ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION
AND MODIFYING OPINION
[NO CHANGE IN JUDGMENT]**

**THE COURT:**

The opinion in appeal No. A154960, filed on May 14, 2020, was not certified for publication in the Official Reports. For good cause appearing, pursuant to California Rules of Court, rules 8.1105(b), (c), and 8.1110, the opinion is certified for partial publication. Accordingly, respondent's request for publication is GRANTED IN PART.

The nonpublished opinion, filed on May 14, 2020, is ordered modified. On page 1, the introduction is deleted and replaced with the following new introduction:

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion part III.

1

"We consider an order preliminarily enjoining a company from broadcasting television or radio advertisements, or describing itself online, using words and images that were alleged to be "false and misleading" in violation of California's False Advertising Law (FAL), Business and Professions Code, section 17500 et seq., and the Unfair Competition Law (UCL), *id.*, section 17200 et seq.  After holding five hearings, the trial court enjoined HomeAdvisor, Inc., and its parent company, ANGI Homeservices, Inc. (collectively, HomeAdvisor) from broadcasting certain advertisements, but, with the exception of advertisements HomeAdvisor discontinued, it permitted HomeAdvisor to continue broadcasting them for specified lengths of time if accompanied by a disclaimer.  HomeAdvisor contends the order is vague, indefinite, overbroad, and unconstitutional.  We disagree and affirm."

On pages 1 to 2, the first sentence of the Factual and Procedural History is deleted and replaced with the following new sentence:

"In March 2018, the People of the State of California, acting by and through the District Attorney for the City and County of San Francisco (the People) filed a complaint against HomeAdvisor alleging it engaged in conduct in violation of the FAL and the UCL."

These modifications effect no change in the judgment.

Dated: _____                    _____, P. J.

2

Superior Court of the City and County of San Francisco, Hon. Harold E. Kahn

Morgan, Lewis & Bockius, Collie Fitch James, IV, Adam D. Teitcher, Meghan Lynn Phillips and Mark A. Feller, for Defendants and Appellants.

George Gascon, District Attorney, Evan H. Ackiron, Alethea Murray Sargent and Ernst Andrew Halperin, Assistant District Attorneys, for Plaintiff and Respondent.